UNITED STATES of America

v.

Alvin Randall CARROLL.

Crim. No. S90-0471.

United States District Court,
D. Maryland.

Sept. 4, 1992.

Richard D. Bennett, U.S. Atty., Maury S. Epner, Asst. U.S. Atty., Baltimore, Md., for Government.

Fred Warren Bennett, Federal Public Defender, Joseph A. Balter, Asst. Federal Public Defender, Baltimore, Md., for defendant.

## MEMORANDUM OPINION

SMALKIN, District Judge.

The defendant in this criminal case was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (West 1976 & Supp.1992), after a jury trial. A presentence investigation was conducted in accordance with the scheduling order entered by the Court under Local Rule 213.2, D.Md., and a revised presentence report was forwarded to the Court, after counsel had the opportunity to comment fully upon the initial report. In the revised presentence report, the probation officer calculated the total offense level as 12, under the Sentencing Guidelines (U.S.S.G. § 2K2.1(a)) in force at the time the offense was committed. The probation officer noted that the defendant was not eligible for the vastly enhanced penalties of the Armed Career Criminal Act, 18 U.S.C. § 924(e). The probation officer recommended an upward departure because she felt that the defendant's criminal history category (al-

though the highest category, VI) was too low to reflect his dangerousness. *See* U.S.S.G. § 4A1.1. Government counsel also requested an upward departure, and defense counsel requested a downward departure. The Court, in a tentative findings letter under U.S.S.G. § 6A1.3, informed counsel that there would be, in the exercise of its discretion, no departures in this case, upwards or downwards. Several weeks later, the Government submitted a "Sentencing Memorandum," renewing its call for an upward departure, but also asserting for the first time that the probation officer had miscalculated the offense level.

The Government's sentencing memorandum points out (and the preponderance of the trial evidence establishes) that the defendant was pointing his gun at a Baltimore City police officer when apprehended. Therefore, the Government claims that the probation officer's Guideline calculation of 12 was wrong, in that the "cross-reference" provision of U.S.S.G. § 2K2.1(c) requires a higher offense level, *viz.*, 18. The Government argues that, because the defendant pointed the gun at the apprehending officer, he used it in connection with "another offense," *viz.*, aggravated assault, which has a higher offense level. *See* U.S.S.G. § 2A2.2. Of course, the assault offense, because it did not involve a federal officer, is not a federal offense. Defendant has not been prosecuted in state court for that offense; however, because there is no statute of limitations for felonies or so-called "penitentiary misdemeanors" in Maryland, he may still be so prosecuted. *See* Md. Cts. & Jud.Proc.Code Ann. § 5–106 (1975).

The Court, by letter dated September 3, 1992, rejected the Government's position on the applicability of § 2K2.1(c). This Memorandum Opinion is entered to amplify on that letter.

■ The Court will briefly discuss the Government's call for an upward departure, which, while presenting no issue of legal importance, is remarkable for its audacity. The Government, apparently disappointed at not being able to pin the Draconian penalties of the Armed Career Criminal Act on Mr. Carroll, is now arguing for an upward departure on several grounds. Only one of them will be mentioned, not because it has any convincing force to the Court, but to illustrate the state of intellectual penury to which federal criminal practice has been reduced by the advent of guideline sentencing. The Government argues that the mere happenstance that defendant committed this offense before the Sentencing Commission substantially raised the penalties for it, *see*, U.S.S.G. App. C, Amendment 374, should be disregarded by the Court, and the defendant should be sentenced, "by analogy," as if the new, higher guidelines were in force before they were in force.

One would think that such "reasoning" would be confined to the realm of fancy, but, at least one federal appellate court seems to have accepted it as supporting an upward departure. *United States v. Harotunian*, 920 F.2d 1040, 1046 (1st Cir.1990). After reading *Harotunian*, this Court, in the exercise of its discretion, unhesitatingly rejects the Government's upward departure argument premised on a later increase in the punishment prescribed for the offense. Any exercise of judicial discretion that so results in deprecating the constitutional protection against *ex post facto* punishment is so bereft of intellectual honesty that it perforce abuses judicial discretion, and this Court simply will not do that.

The Government's other upward departure arguments do not merit discussion.

■ The Court next turns to the matter of U.S.S.G. § 2K2.1(c), which the Government advances as its basis for concluding that the probation officer misapplied the Guidelines.

A short answer to this contention is that the Government has waived it by not presenting it in the orderly course of the presentence investigation. The advent of Guideline sentencing has cast the probation officer in the role of quasi-judge, to whom the litigants present their legal and factual arguments respecting sentencing. The probation officer, at least in theory, tentatively resolves the legal and factual disputes in the process of revising the presen-

tence report in light of counsel's comments thereon. This, in theory, is supposed to simplify the judge's job at sentencing. In reality, of course, the sentencing judge under the Guideline regime must spend inordinate amounts of time doing what probation officers are generally ill-suited, both by training and temperament, to do, that is, being a judge. Nevertheless, the Government, as much as defense counsel, should be held to strict compliance with the Court's procedures during the presentence investigation phase. The Government has offered no excuse here for its failure to comply.

The Court does not bottom its opinion, though, on the concept of waiver, because the issues raised are too important to be sidestepped in that way. Rather, because there are important issues here that have a drastic impact on the practice of federal criminal law, especially in light of zealous enforcement of laws such as 18 U.S.C. § 922(g) as part of "Operation Triggerlock," they should be addressed head-on.

█ The Court squarely rejects the Government's contention that the cross-reference in U.S.S.G. § 2K2.1(c) *requires* the Court to sentence a felon-in-possession for any state-law crime he may have committed with a gun he possessed. To reach the result desired by the Government requires a reading of the word *offense* that is both beyond the powers of the Sentencing Commission to prescribe and repugnant to such vestigial notions of federalism as survive into the "postmodern" age.

The Court starts its search for meaning within § 2K2.1(c) itself. That section uses the language *another offense*, which, lacking any settled meaning in the law, ought to be given its customary meaning. *Another* could customarily mean, in this context, either "one more," "different," or "one of the same sort as." *Webster's New World Dictionary* 57 (3rd Ed.1988). Obviously, then, resort to the dictionary is of little help in construing the phrase *another offense.*

The Court will next expand its search to the Guidelines' definitional reference,

§ 1B1.1, App. Note 1(1), which defines *offense* as follows:

"Offense" means the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context.

This masterpiece of ambiguity does little to shed light on the problem, and resort to § 1B1.3, with its broadly inclusive language, likewise yields no fruitful result. For example, no one could reasonably contend that the cross-reference in § 2K2.1(c) traps within it, for federal sentencing purposes, every violation of state law that a convicted felon has committed while in possession of a firearm, but that absurd result could be reached under the sweeping language of § 1B1.3(a)(1) ("all acts and omissions committed ... by the defendant ... that occurred during the commission of the offense of conviction.").

The Court has concluded, in light of the inconclusiveness of the foregoing inquiry, that the proper place to seek the definition of *offense* is the statute from which the Sentencing Commission derives its power in the first place. That statute provides, in pertinent part, that the federal sentencing laws apply to "a defendant who has been found guilty of an offense described in any Federal statute...." 18 U.S.C. § 3551(a) (West 1985 & Supp.1992). No one could seriously argue, then, that the federal sentencing laws apply to those guilty of conduct that does not violate federal law. Yet, if the cross-reference in § 2K2.1(c) is read as requiring the court to *punish* a defendant as if he had been convicted of a federal offense for conduct that is not a federal offense, the cross-reference would clearly take that Guideline outside the statutory grant of authority given the Sentencing Commission, by authorizing it to punish non-federal offenses under Guidelines applicable only to federal crimes.

█ Of course, an argument can, and undoubtedly will, be made, ignoring reality, that the defendant is only being punished for the federal offense of being a felon-in-possession, never mind that the real punishment required by the cross-reference is

for an offense over which the federal court has no jurisdiction. Those who would be persuaded by such an argument would undoubtedly have been impressed, had they been there, with the Emperor's magnificent new suit of clothes. Furthermore, as anyone associated with the practice of federal criminal law in the past five years knows, sentencing is now the engine driving the entire federal criminal process from beginning to end. Indeed, one can now be sentenced for "relevant conduct" · for which one has never been tried or convicted; all that is required is to convince the judge of the existence of the relevant conduct by a preponderance of the evidence, and the judge *must* impose the mandated sentence. *(See United States v. Urrego–Linares*, 879 F.2d 1234 (4th Cir.), *cert. denied*, 493 U.S. 943, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989)). Indeed, one can be punished for "relevant conduct" for which a jury has acquitted him. *Mistretta v. United States*, 488 U.S. 361, 376 n. 10, 109 S.Ct. 647, 657 n. 10, 102 L.Ed.2d 714 (1989); *United States v. Coleman*, 947 F.2d 1424, 1428–29 (10th Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1590, 118 L.Ed.2d 307 (1992). As the Queen of Hearts said, "Sentence first— verdict afterwards." *See* L. Carroll, *Alice's Adventures in Wonderland* 146 (Random House, 1946). Federal offenders deserve better justice than that meted out in the court of the King and Queen of Hearts.

Turning away from the logic of the matter to the law, there are a number of reasons why the cross-reference is illegal. First, there is the fact that, as discussed *ante*, it is *ultra vires* the power of the Commission over the punishment of federal offenses, as prescribed by statute, to punish for conduct that does not violate federal law. Such a result can only be reached if the Commission's "real offense" approach to punishment, *see* United States Sentencing Commission, *Guidelines Manual*, Ch. 1, Pt. A at 4–5 (Nov.1991), is stretched beyond a disregard for formalities in charging, to a disregard for the limits of federal jurisdiction in the sentencing phase.

Second, and more to the point, it is fundamentally offensive to any proper notion of federalism to "federalize," for punishment purposes, countless thousands of state crimes merely because the offender happens to be a convicted felon with a gun. Although chimerical, the supposed nexus between convicted felons in possession of handguns and interstate commerce has been deemed sufficient by the federal appellate courts to sustain the constitutionality of 18 U.S.C. § 922(g), usually in opinions lacking in any real analysis. *See, e.g., United States v. Wallace*, 889 F.2d 580, 583 (5th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3243, 111 L.Ed.2d 753 (1990). Notwithstanding the power of Congress in connection with firearms regulation, it is common knowledge that recent Congressional attempts to federalize such crimes as murder when committed with a handgun that has travelled in interstate commerce have failed of enactment. To allow the Sentencing Commission, as "a sort of junior-varsity Congress," *Mistretta v. United States*, 488 U.S. at 427, 109 S.Ct. 683 (Scalia, J., dissenting), to exercise palpable sentencing power over non-federal offenses by the simple and innocuous-looking expedient of a "cross-reference" is blatantly intolerable and illegal, and the cross-reference in § 2K2.1(c) must, therefore, be read as being confined to other *federal* offenses that the offender might have committed with the gun in question.

That an illegal result was intended by the Commission is patent from the fact that the Commission baldly stated, in its (now-repealed, but applicable in this case) background commentary to § 2K2.1, that the firearms statutes "often are used as a device to enable the federal court to exercise jurisdiction over offenses that otherwise could be prosecuted only under state law." The fact that high sentences were given in some of these cases before Guideline sentencing, because the offender had committed other offenses, was relied upon by the Commission to justify the cross-reference at issue. *Ibid.* There is, of course, a world of difference between the "bad old days" of pre-Guidelines sentencing, in which judicial discretion could be meaningfully exercised, and the mandatory regime of Guideline sentencing, under which the judge

*must* impose the Commission's prescribed sentence. It is precisely this mandatory aspect of § 2K2.1(c), blatantly adopted by the Commission as a clever device for punishing conduct for which the offender cannot be federally prosecuted, that fatally flaws it.

The Court recognizes that there is a Ninth Circuit case in which the cross-reference in question has been applied to state law offenses. *See United States v. Mun*, 928 F.2d 323 (9th Cir.1991). *Mun*, however, was concerned with double jeopardy questions, and the opinion did not thoughtfully consider the points discussed hereinabove. Likewise, in *United States v. Newbert*, 952 F.2d 281 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1702, 118 L.Ed.2d 411 (1992), the questions treated *ante* were not discussed. *Newbert* considered only the question of whether, in the case of a continuing course of fraudulent conduct, otherwise relevant conduct was excluded simply because it constituted a state offense. The Ninth Circuit, applying U.S.S.G. § 1B1.3(a)(2), which clearly does not apply to the present case because of the grouping rules of U.S.S.G. § 3D1.2(d), concluded that the relevant conduct definition was broad enough to capture the conduct in question as "relevant conduct." To the extent that *Newbert* should be followed at all, it should be confined to the range of offenses discussed therein, which does not include such simple offenses as felon-in-possession.

For the reasons stated above, the defendant will be sentenced on the basis of a total offense level of 12, Criminal History Category VI.