UNITED STATES of America, Plaintiff–Appellant,

v.

Alvin Randall CARROLL, Defendant–Appellee.

No. 92–5658.

United States Court of Appeals, Fourth Circuit.

Argued July 15, 1993.

Decided Aug. 20, 1993.

Maury S. Epner, Asst. U.S. Atty., Baltimore, MD, argued (Richard D. Bennett, U.S. Atty., on brief), for plaintiff-appellant.

Denise Charlotte Barrett, Asst. Federal Public Defender, Baltimore, MD, argued (James K. Bredar, Federal Public Defender, on brief), for defendant-appellee.

Before WILKINS,* NIEMEYER, and HAMILTON, Circuit Judges.

## OPINION

PER CURIAM:

The government appeals, 18 U.S.C. § 3742(b)(2), the district court's refusal to apply the cross reference provision of United States Sentencing Commission, *Guidelines Manual*, § 2K2.1(c)(2) (Nov. 1989), in calculating the sentence of the defendant, Alvin Carroll, who was convicted of felony possession of a firearm, 18 U.S.C. § 922(g). For the reasons stated below, we vacate the defendant's sentence and remand for resentencing.

## I

The facts presented in this appeal are straightforward. In the early morning hours of June 24, 1990, Baltimore City Police Officer Sloan and her partner were attempting to execute an arrest warrant issued for an individual suspected of murder. While walking in an alley behind the suspect's residence, two men, both of whom were brandishing firearms, ran past Officer Sloan and her partner and escaped through the alley. The third man, later identified to be the defendant, was crouched down in the back yard of the residence from which the first two men had emerged seconds earlier. The defendant had his arms fully extended, pointing a .357 magnum handgun loaded with hollow-pointed bullets at Officer Sloan. Officer Sloan instructed the defendant to release the firearm. The defendant initially did not comply, but did so after Officer Sloan's second request.

The defendant was indicted for felony possession of a firearm, 18 U.S.C. § 922(g). The defendant's jury trial commenced on June 8, 1992. After a two-day trial, the jury returned a verdict of guilty. The defendant's presentence report (PSR) calculated defendant's base offense level at 12, U.S.S.G § 2K2.1(a)(2). The PSR also calculated defendant's criminal history category at VI, resulting in a guideline range of 30–37 months.

Prior to the sentencing hearing, but after the date fixed by the district court for submission of objections to the PSR, the government filed a sentencing memorandum. The government urged the district court to depart upward on the ground that the defendant's criminal history category did not adequately reflect the seriousness of his criminal conduct or his likelihood of recidivism. In addition, the government maintained that the district court should apply U.S.S.G. § 2K2.1(c)(2). This guideline subsection provides for a cross reference to the guideline applicable to any offense committed in connection with the use or possession of the firearm "if the resulting offense level is greater than that determined" by application

of the guidelines set out in U.S.S.G. § 2K2.1(a) and (b). The government argued that because the defendant pointed his handgun at Officer Sloan and initially refused to drop his loaded handgun, his actions constituted an aggravated assault. *See* U.S.S.G. § 2A2.2, comment. (n. 1) (noting that an aggravated assault is "a felonious assault that involved (a) a dangerous weapon with intent to do bodily harm (*i.e.* not merely to frighten), or (b) serious bodily injury, or (c) an intent to commit another felony"). Accordingly, the government advocated application of the guideline for aggravated assault, U.S.S.G. § 2A2.2, which would result in a base offense level of 15, with a three-level increase for use of the handgun. *See* U.S.S.G. §§ 2A2.2(a); 2A2.2(b)(2), (c).[1]

Three days after the filing of the government's sentencing memorandum, and without affording the defendant an opportunity to respond, the district court issued a published opinion in which it, *sua sponte,* rejected the positions advanced by the government. The district court began by observing that although the government had failed to file its objections in a timely manner, the court would nonetheless consider the merits of the arguments advanced in the sentencing memorandum. *United States v. Carroll,* 798 F.Supp. 291, 292 (D.Md.1992).[2] After rejecting the request for an upward departure,[3] the district court repudiated the argument that the guidelines could require application of a cross reference, via U.S.S.G. § 2K2.1(c)(2), to aggravated assault. *Id.* at 292.[4]

Observing that Congress vested power in the Sentencing Commission to establish sentencing guidelines for any "defendant who has been found guilty of an offense described in any Federal statute," 18 U.S.C. § 3551(a), the district court concluded that because Congress authorized the Sentencing Commission to establish sentences for those convicted of *federal offenses,* a requirement of a cross reference to what it labeled a *state offense* was "*ultra vires* the power of the Commission." *Carroll,* 798 F.Supp. at 294. Thus, the district court held that the cross reference must "be read as being confined to other *federal* offenses that the offender might have committed with the gun in question" and refused to apply the cross reference. *Id.*[5] The district court deemed the cross reference "fundamentally offensive to any proper notion of federalism to 'federalize,' for punishment purposes, countless thousands of state crimes merely because the offender happens to be a convicted felon with a gun." *Id.* The district court then sentenced the defendant to 37 months' imprisonment, a sentence that did not include application of the cross reference set forth in U.S.S.G. § 2K2.1(c)(2). *Id.* at 295.

The government appeals.

---

1. The adjusted offense level of 18, combined with a criminal history category of VI, would have yielded a guideline range of 57–71 months' imprisonment.

2. While issues relating to factual disputes properly may be deemed waived by failure to timely object, the issue regarding the authority of the Sentencing Commission to incorporate one guideline into another by use of a cross reference is a legal one. Regardless of the positions taken by the parties on appeal, a district court is required to properly apply the guidelines and related legal principles.

3. On appeal, the government does not challenge this decision.

4. To facilitate this discussion, the district court assumed that a preponderance of the evidence would support a finding that the defendant had committed an aggravated assault. On appeal, the defendant contends that the district court rendered a finding, and that this finding was clearly erroneous. We do not reach this issue because, not only did the district court not render a finding, the defendant did not file a cross appeal to allow our review of the issue. Thus, we leave this determination for consideration on remand by the district court as the finder of fact. In this regard, we note that intent to do bodily harm must "be judged objectively from the visible conduct of the actor and what one in the position of the victim might reasonably conclude." *United States v. Perez,* 897 F.2d 751, 753 (5th Cir.) (applying cross reference in U.S.S.G. § 2A2.2(c)(1) to aggravated assault guideline), *cert. denied,* 498 U.S. 865, 111 S.Ct. 177, 112 L.Ed.2d 141 (1990).

5. Noting that the defendant had not been charged with the state offense of aggravated assault, the district court observed that the offense carried no statute of limitations in Maryland and that the defendant could be prosecuted for the offense in the future.

## II

Historically, Congress has permitted federal courts to "practice[ ] a policy under which a sentencing judge ... exercise[s] a wide discretion in the sources and types of evidence used to assist ... in determining the kind and extent of punishment to be imposed." *Williams v. New York*, 337 U.S. 241, 246, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337 (1949).[6] Accordingly, when sentencing a defendant, a sentencing judge could "consider information about the convicted person's past life, health, habits, conduct, and mental and moral propensities" regardless of the source of the information. *Id.* at 245, 69 S.Ct. at 1082; *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972).[7] This approach of considering charged conduct, real offense behavior, and the full breadth of a defendant's characteristics "ensures that the punishment will suit not merely the offense but the individual defendant." *Wasman v. United States*, 468 U.S. 559, 564, 104 S.Ct. 3217, 3220, 82 L.Ed.2d 424 (1984).

█ In accepting the sentencing guidelines,[8] Congress continued the practice of permitting a sentencing court to consider both real offense behavior and charged conduct. *See United States v. Blanco*, 888 F.2d 907, 909 (1st Cir.1989) (noting that the guidelines embody "a compromise ... among considerations that favor a 'real offense' sentencing system and those that favor a 'charge offense' system"); U.S.S.G. § Ch. 1, Pt. A(4)(a). Under the sentencing guidelines, the offense of conviction dictates selection of the proper chapter two guideline, *United States v. Lambert*, 994 F.2d 1088, 1091 (4th Cir.1993); U.S.S.G. § 1B1.2(a), while the relevant conduct guideline, U.S.S.G. § 1B1.3, captures the real offense behavior and the

characteristics of the defendant through specific offense characteristics and cross references. *See Lambert*, 994 F.2d at 1092; U.S.S.G. §§ 1B1.2(b), 1B1.2, comment. (n. 3); *see also Blanco*, 888 F.2d at 909 ("Once the court determines the proper guideline, however, the Guidelines instruct it to determine the applicability of various adjustments (specific offense characteristics, chapter three adjustments, certain cross references) by looking to the offender's *actual conduct*."). Like the sentencing provision at issue in *McMillan v. Pennsylvania*, 477 U.S. 79, 89–90, 106 S.Ct. 2411, 2417–18, 91 L.Ed.2d 67 (1986), the guidelines examine factors considered under preguideline sentencing, establish the precise weight to be afforded to a factor, and channel the discretion sentencing courts have historically always exercised, *United States v. Corbin*, No. 92–1459, 998 F.2d 1377, 1384 (7th Cir.1993). The intended result of the guideline approach is "replace[ment of] subjective, individualized judicial assessments of the gravity of criminal conduct with formal rules in order to generate more consistent, and therefore more just," and proportionate sentences. *Lambert*, 994 F.2d at 1092.

## III

█ Applying these principles, we have no difficulty in concluding that the Sentencing Commission did not exceed its mandate or violate principles of federalism by requiring a cross reference to the offense of assault for one convicted of a federal weapons violation.[9] Contrary to the district court's suggestion that the cross reference "federalizes a state crime," the cross reference properly distinguishes "the culpability—and the resultant punishment—of a person who passively pos-

---

6. It is well established that "Congress ... has the power to fix the sentence for a federal crime, and [that] the scope of judicial discretion with respect to a sentence is subject to congressional control." *Mistretta v. United States*, 488 U.S. 361, 364, 109 S.Ct. 647, 650, 102 L.Ed.2d 714 (1989) (citations omitted).

7. There exist some constitutional constraints on this rule, however. For example, only accurate information may be considered, *Townsend v. Burke*, 334 U.S. 736, 740–41, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948), and a sentencing

court may not rely on convictions obtained without benefit of counsel, *Tucker*, 404 U.S. at 448–49, 92 S.Ct. at 592.

8. *See* 28 U.S.C. § 994(p) (providing that guidelines and amendments thereto shall take effect 180 days after submission unless "modified or disapproved by Act of Congress").

9. We review *de novo* guideline selection by the district court. *Lambert*, 994 F.2d at 1091 (citation omitted).

sesses a gun [from the .one] who possesses that same gun but also uses it. . . ." *United States v. Willis*, 925 F.2d 359, 361 (10th Cir.1991). The Commission did not exceed its authority; it merely provided the means to sentence a defendant found guilty of a federal offense in a manner that "reflect[s] the reality of the crime." *Id.* In applying the cross reference as directed by the guidelines, a sentencing court does not punish a defendant for a state offense over which a federal court has no jurisdiction. Instead, the cross reference allows the sentencing court to move within the guidelines range and to sentence up to the statutory maximum for the offense of conviction, an offense over which the court unquestionably has jurisdiction. *Cf. Corbin* No. 92–1459, 998 F.2d at 1384–85.[10] The cross reference, indeed all guideline cross references, specific offense characteristics, and adjustments are no more than devices for measuring the seriousness of the offense and the conduct for which a sentence is imposed, factors which sentencing judges have routinely and historically taken into account when sentencing a defendant.[11]

■ The commentary to U.S.S.G. § 2K2.1(c)(2) explicitly and unequivocally incorporates reliance on the actual conduct of the defendant, making clear that the "other offense" referred to in the cross reference need not be a violation of federal law. It provides in pertinent part:

> The firearm statutes often are used as a device to enable the federal court to exercise jurisdiction over offenses that otherwise could be prosecuted only under state law. For example, a convicted felon may be prosecuted for possessing a firearm if

he used the firearm to rob a gasoline station. . . . [S]uch prosecutions result in high sentences because of the true nature of the underlying conduct. The cross reference at § 2K2.1(c)(2) deals with such cases.

U.S.S.G. § 2K2.1(c)(2), comment. (backg'd). Guideline commentary must "be treated as an agency's interpretation of its own legislative rule," and as such, interpretive or explanatory commentary "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, —— U.S. ——, ——, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993). Accordingly, "[f]ailure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to reversal on appeal." U.S.S.G. § 1B1.7.

The district court, however, refused to follow the commentary, labeling it "patent" evidence of the "illegal result" intended by the Sentencing Commission. *Carroll*, 798 F.Supp. at 294. The district court misunderstood the commentary. The . commentary properly continues the preguideline practice of "necessarily consider[ing] the circumstances of an offense in selecting the appropriate punishment." *McMillan*, 477 U.S. at 92, 106 S.Ct. at 2419. While this approach may generate debate, this "controversy . . . turns on congressional judgments that are not subject to amendment by the judiciary." *United States v. Bronaugh*, 895 F.2d 247, 251 (6th Cir.1990). Dissatisfaction, therefore, must be directed to Congress, not to the

---

**10.** Following the rationale of the district court, no court could ever consider conduct beyond the offense of conviction in determining a sentence. However, the Sentencing Reform Act and the guidelines provide for consideration of all relevant conduct, U.S.S.G. § 1B1.3, and characteristics of the offense and the offender, *see* 18 U.S.C. § 3553(a). This court, as well as others, has consistently upheld consideration of conduct outside the count of conviction for sentencing purposes. For instance, through application of the relevant conduct guideline, uncharged conduct and conduct embodied by dismissed counts, technically beyond the jurisdiction of the sentencing court, can be considered when proven by

a preponderance of the evidence. *See, e.g., United States v. Williams*, 880 F.2d 804 (4th Cir.1989) (consideration of conduct from dismissed counts); *United States v. Isom*, 886 F.2d 736 (4th Cir.1989) (consideration of acquitted conduct).

**11.** The Sentencing Commission could have built into the firearms guideline specific enhancements for the manner in which the firearms were used, as it did in the robbery guideline. *See* U.S.S.G. Ch. 2, Pt. B. This choice of a different technique for addressing the same conduct cannot transform the ultimate determination of the same sentence into an *ultra vires* act.

Sentencing Commission, prosecuting attorneys, or defendants. ·

■ We conclude that "the language of the guideline, the policy behind the guidelines, the commentary to other related guidelines, [and] the definition of relevant conduct ... all indicate that the cross reference applies to state as well as federal offenses." *United States v. Smith*, 910 F.2d 326, 330 (6th Cir.1990).[12] Accordingly, we join several other circuits in holding that a sentencing court may apply the cross reference set forth in U.S.S.G. § 2K2.1(c)(2) to conduct amounting to a violation of state law. *See Willis*, 925 F.2d at 361–62; *Smith*, 910 F.2d at 330; *cf. United States v. Concepcion*, 983 F.2d 369 (2d Cir.1992) (stating that "the Commission intended 'another offense' to include an offense that could not be prosecuted in federal court"); *United States v. Humphries*, 961 F.2d 1421 (9th Cir.1992) (noting that defendant need not be convicted of underlying state offense before application of cross reference); *Corbin*, 998 F.2d at 1384.

## IV

In summary, the district court's holding that the Sentencing Commission acted beyond the scope of its authority by use of the cross reference provision set forth in U.S.S.G. § 2K2.1(c)(2) is erroneous. Accordingly, we vacate the sentence imposed by the district court and remand for resentencing. On remand, the district court is directed to render a factual finding on whether an assault occurred, and if so, to apply the cross reference set forth in U.S.S.G. § 2K2.1(c)(2).

VACATED AND REMANDED FOR RE-SENTENCING.

---

**12.** We have implicitly approved the consideration of non-federal conduct for the purposes of applying a cross reference and therefore determining the guideline sentence. *See United States* *v. DePew*, 932 F.2d 324 (4th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 210, 116 L.Ed.2d 169 (1991).