**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

LEONARD NORMIL, III, a/k/a Colin

No. 94-5830

Courtney Henderson, a/k/a Jamaican
Tony, a/k/a Tony Henderson, a/k/a
Colin Courtney Atwell,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                    No. 94-5848

DAVID ANTHONY HENDERSON,
<u>Defendant-Appellant.</u>

Appeals from the United States District Court
for the Eastern District of North Carolina, at Greenville.
Terrence W. Boyle, District Judge.
(CR-93-62-BO)

Argued: July 18, 1996

Decided: November 13, 1997

Before MURNAGHAN and ERVIN, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Vacated and remanded for resentencing by unpublished opinion.
Judge Ervin wrote the opinion, in which Judge Murnaghan and Senior
Judge Phillips joined.

**COUNSEL**

**ARGUED:** Paul K. Sun, Jr., SMITH, HELMS, MULLISS & MOORE, L.L.P., Raleigh, North Carolina, for Appellants. John Douglas McCullough, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Carl L. Epstein, Indianapolis, Indiana, for Appellant Normil. Janice McKenzie Cole, United States Attorney, Ted F. Mitchell, Third Year Law Student, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

ERVIN, Circuit Judge:

Leonard Normil, III and David Anthony Henderson challenge their sentences following convictions for offenses in connection with a drug distribution conspiracy in New Bern, North Carolina. For the reasons that follow we vacate their sentences and remand both cases to the district court for further proceedings consistent with this opinion.

I.

In May 1990, the City of New Bern Police Department and the Drug Enforcement Administration (DEA) began a joint investigation of a drug distribution conspiracy involving Normil, Henderson, and others. On September 1, 1993, officers stopped codefendant Valerie Gibbs and discovered 53.9 grams of crack on her person. On November 30, 1993, DEA agents interviewed Valerie Gibbs concerning her knowledge of the drug distribution activities of Normil, Henderson, and others. Gibbs, acknowledged by the government to be a crack addict, gave a statement to the government alleging that, on one occasion, Normil and Henderson came to the home of her boyfriend--

2

codefendant Harold Pollock--with four bags of crack. (J.A. at 130-31). She estimated that the bags were about the size of the package she had when she was arrested: 53.9 grams. Gibbs also alleged that Normil, codefendant Elvin Floris, or Henderson had come to Pollack's home "on a daily basis" from September 1992 to September 1993, leaving multiple 1/16 ounce packages (about 2 grams). Gibbs' statement to the government was never provided to Normil or Henderson, and is not in the record. The U.S. Attorney who negotiated the plea agreements was likewise unaware that Gibbs had made a statement, although the statement was available to him had he known of its existence.

In a fourteen-count superseding indictment issued December 7, 1993, appellants were charged--along with five other codefendants--with conspiracy to possess with intent to distribute cocaine base, in violation of 21 U.S.C. § 846; aiding and abetting the distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1). Normil was also charged with engaging in a continuing criminal enterprise, under 21 U.S.C. § 848; making a false statement on a passport application, under 18 U.S.C. § 1542; fraud in connection with identification documents, under 18 U.S.C. § 1028(a)(1); and making a false representation as a citizen of the United States, under 18 U.S.C. § 911. Initially, both men pled not guilty to all charges.

On July 18, 1994, Normil pled guilty to Count Three, which charged the distribution of crack and aiding and abetting the distribution, and Count Twelve, which charged the giving of false statements in a passport application. Normil entered into a plea agreement in which the estimated drug quantity was based upon the amount seized or purchased by the government in its investigation--about 175 grams--triggering an initial base offense level of 34 (150-500 grams).[1]

_____

[1] In a letter dated September 13, 1994, addressed to Normil's counsel, the U.S. Attorney stated, "This letter is to confirm our recent telephone conversation wherein I confirmed to you that, at the time the plea agreement was entered into, the parties contemplated that the government could prove the defendant's involvement with 179.5 grams of cocaine base. This figure represents the amount of cocaine base purchased or seized from the participants in this conspiracy."

See U.S.S.G. § 2D1.1(c)(3). (J.A. at 48-52). The parties also agreed to a three-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1. Normil thus reserved the right to appeal a sentence exceeding level 31.

Similarly, on August 29, 1994, Henderson entered a guilty plea to Count Six, which charged distribution of cocaine base and aiding and abetting in the distribution. The parties stipulated that Henderson was responsible for the amount of crack alleged in Count 6 (to which Henderson was pleading guilty) and in Count 10--a total of 32.6 grams.**2**

Both plea agreements specified that the stipulations and recommendations were not binding on the court:

> The Defendant acknowledges that the Level specified above is an estimate from information known at present. It is not a promise and is not binding on the Court. The Defendant agrees that should the sentence imposed exceed Level 31, this would not affect the validity of the guilty plea, but merely would allow the Defendant to appeal the Guideline range.

> The Defendant understands . . . that the Court is not bound by any sentence recommendation or agreement as to Guideline application, that the sentence has not yet been determined by the Court, that any estimate of the sentence received from any source is a prediction not a promise, and that even if a sentence up to the statutory maximum is imposed, the Defendant may not withdraw the plea of guilty.

_____

**2** The stipulation was not contained in the plea agreement, but was later memorialized in a separate document and filed with the district court. (J.A. 63-7, 93-4). The stipulation specified that Henderson would "be held responsible only for the amount of cocaine alleged in COUNTS SIX and TEN of the Bill of Indictment, to-wit 6.9 grams as to COUNT SIX and 25.7 grams as to COUNT TEN, and [ ][he] was in no way involved in the violation set forth in COUNT THREE of said indictment." Count Three charged a distribution and an aiding and abetting a distribution of crack on June 10, 1993, involving Normil, Floris, Henderson, Harold Pollack, and Valerie Gibbs.

4

The government reserved the right at sentencing to present any evidence or information under 18 U.S.C. § 3661, and agreed not to "further prosecute the Defendant[s] for conduct constituting the basis for the Indictment."

Before sentencing, the government provided the Gibbs statement to the probation office to be used in preparing the pre-sentence reports (PSRs) for both Normil and Henderson. In calculating Normil's sentence, the probation office began with Gibbs's statement that Pollack received multiple two-gram packages of crack, took an average of four grams per day, and multiplied it by every day between September 1, 1992 to August 1, 1993, arriving at a total amount of 1340 grams. In addition, based on Gibbs's statement about the four 53.9-gram bags, the probation office added 215.6 grams. To that amount, the probation office added 4690 grams based on information from unidentified "investigative documents," estimating that seven other street dealers involved in the conspiracy sold about two grams every day from September 1992 to August 1993. Finally, the probation office added the quantity actually seized or purchased by the Government--174.9 grams--reaching a grand total of 6,420.5 grams involved in the offense conduct. The new amount increased Normil's base offense level to 40. Additionally, the probation officer recommended a four-level upward adjustment for being an organizer and leader in a criminal enterprise. U.S.S.G. § 3B1.1(a).

At Normil's sentencing hearing on October 17, 1994, Normil objected to the drug quantity calculation on the ground that the government used evidence which it had failed to disclose at the time of the plea. Normil also argued that the calculations and their sources were unreliable. The district court asked the probation officer to explain how he arrived at the offense quantity. In essence, the probation officer explained that the estimate was based upon the information provided by Gibbs, as well as various unspecified investigative documents. The court, observing that the probation officer had used the most conservative figures and the most compact time period, adopted the quantity contained in the PSRs. The court allowed a three-level downward adjustment for acceptance of responsibility, and imposed a two-level enhancement under U.S.S.G. § 3B1.1(c). Normil was sentenced to 360 months' incarceration with five years' supervised release. In calculating Henderson's sentence, the probation

5

office reported that he sold crack on two occasions: he sold 6.9 grams with codefendant Floris, and he sold 25.7 grams on another occasion. Based on the Gibbs statement, the probation office used the same calculus to hold Henderson accountable for at least 6,420.5 grams of cocaine base. The probation office did not recommend an adjustment for role in the offense. Nor did the office find a demonstration of responsibility warranting a reduction under U.S.S.G.§ 3E1.1. Henderson's total offense level was 38. The probation office's recommendations were thus consistent with the stipulations in the plea agreement that Henderson was not responsible for Count Three. J.A. 96-8, 101-2.

At Henderson's sentencing hearing on November 8, 1994, the district court again accepted the calculations of the probation office based on the Gibbs statement and the investigation documents. Accordingly, the court found Henderson responsible for 6,420.5 grams. The court also found Henderson to be an organizer. Further, the court denied Henderson a three-level reduction for acceptance of responsibility, noting that the adjustment would have no effect on his sentence, since he would still be at or above level 40. Henderson was sentenced to 420 months' imprisonment, followed by five years' supervised release. These appeals followed.

II.

Whether the district court improperly considered information at sentencing is a question of law, to be reviewed de novo. United States v. Daughtry, 874 F.2d 213, 217-18 (4th Cir. 1989). Plea bargains are evaluated using contract principles, but are subject to greater scrutiny because of the constitutional rights at stake. United States v. Ringling, 988 F.2d 504, 506 (4th Cir. 1994).

Normil and Henderson argue that the plea agreements and stipulations precluded the district court from considering information which the government did not disclose at the time of their plea bargains. Normil argues that the commentary accompanying U.S.S.G. § 6B1.2 requires the government to disclose to a defendant all information to be used in calculating the sentence.

> The Commission encourages the prosecuting attorney prior to the entry of a guilty plea or nolo contendre plea

6

under Rule 11 of the Federal Rules of Criminal Procedure to disclose to the defendant the facts and circumstances of the offense and offender characteristics, then known to the prosecuting attorney, that are relevant to the application of the sentencing guidelines. This recommendation, however, shall not be construed to confer upon the defendant any right not otherwise recognized in law.

The Guidelines commentary, Normil and Henderson contend, "must be treated as an agency's interpretation of its own legislative rule, and as such, interpretive or explanatory commentary is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." United States v. Carroll, 3 F.3d 98, 102 (4th Cir. 1993). When Normil and Henderson agreed to plead guilty, they believed that the relevant conduct to be used at sentencing would result in an initial base offense level of 34. But in fact, the government already had the statement of Valerie Gibbs which would lead to estimated drug quantities of more than 30 times the amount that the government indicated it could prove against Normil. Normil and Henderson contend that they were thus denied the ability to make a knowing decision regarding the probable consequences of their guilty pleas. Accordingly, they contend, this court should provide them the benefit of their bargains by confining the sentence to 175 grams of relevant conduct--the amount disclosed to them in the plea negotiations. While conceding that the negotiating U.S. Attorney did not purposely withhold the Gibbs statement, and indeed, was unaware of that evidence, Normil and Henderson argue that if the government is not required to disclose all of its evidence of relevant conduct at the time of the plea bargain, prosecutors may deliberately withhold such information and "blind-side" defendants.

Normil and Henderson also argue that the government, by relying upon the additional information provided to the probation office, violated the provision of the plea agreement in which it agreed not to further prosecute the defendants for conduct constituting the basis for the indictment. To the extent that a stipulation entered by the government is essential to the defendant's bargain, it is binding. Santobello, 404 U.S. at 262. This is true even if the court is not bound by the stipulation. U.S.S.G. § 6B1.4(d), p.s. Thus, they contend that, although the sentence is estimated and subject to the court's discretion, the govern-

7

ment is bound by its promise as to the quantity forming the basis for the defendants' sentences. They rely upon United States v. Hewitt, 942 F.2d 1270 (8th Cir. 1991). In that case, the Eighth Circuit held that the "no further prosecution" clause included information used for sentencing, and remanded for resentencing with instructions to consider only that information agreed to by the parties at the time of the pleas.

Normil and Henderson also cite United States v. Tobon-Hernandez, 845 F.2d 277, 280 (11th Cir. 1988), in which the Eleventh Circuit found:

> In this case, the government and Tobon-Hernandez entered into an explicit plea agreement which stipulated that the conspiracy charge related only to the 14 kilograms of cocaine found in the automobile. Such a stipulation may not have been required by law; such an agreement may not have been wise; but, the government agreed; the government is held to its agreements. As a direct result of the government's breach of the plea agreement through the introduction of evidence relating to the kilograms of cocaine found in the house, the district court imposed a sentence on the conspiracy count involving an amount of cocaine greater than that stipulated to in the plea agreement.

The Tobon-Hernandez court likened the case to United States v. Nelson, 837 F.2d 1519 (11th Cir. 1988), in which the government entered into a plea agreement stipulating to certain facts, but submitted a PSR stating facts contrary to those stipulated to in the agreement. Id.

The government retorts that a sentencing court has broad discretion to consider a wide range of information in arriving at its sentence, including information contained in the PSR and crimes for which a defendant has not been charged. The court is bound neither by the sentencing recommendations of the government nor by the stipulations contained in a plea agreement. The sentencing court's discretion to consider a broad range of available information should not be constrained, the government argues.

8

However, this case is not a matter of constraining a trial judge's access to information. Whether purposeful or not, the government agreed to hold the defendants accountable for one amount, and then presented to the court as the basis for sentencing offense conduct amounts that were more than 30 times greater than that agreed upon. Certainly, without knowledge of the existence of Gibbs's statement-- one of the primary bases for calculating the amount of cocaine-- Normil and Henderson could not make any kind of reasonably accurate assessment of the costs and benefits of pleading guilty to the charges. This sentencing denied Normil and Henderson the benefit of their bargain, and was fundamentally unfair. We could follow the reasoning of the Eighth and Eleventh Circuits, and award Normil and Henderson specific performance of their plea bargains. However, because of the terms of the plea agreements in question and the peculiar circumstances of these cases, we elect instead to vacate Normil and Henderson's sentences and remand their cases to the district court for re-sentencing in accordance with this opinion.

III.

The district court's determinations of facts underlying its application of the sentencing guidelines are reviewed for clear error. United States v. McManus, 23 F.3d 878, 882 (4th Cir. 1994).

The government was required to provide sufficient evidence to prove by a preponderance of the evidence the drug quantities alleged in the PSR. United States v. McManus, 23 F.3d 878, 885 (4th Cir. 1994). The government must offer more than "conclusory statements," United States v. Gordon, 895 F.2d 932, 936 (4th Cir. 1992); it must present evidence with "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). p.s. United States v. Gilliam, 987 F.2d 1009 (4th Cir. 1993).

Normil and Henderson challenge the information provided by the probation office and relied upon by the district court, as uncorroborated, based on conjecture, and inherently unreliable. First, the probation office relied principally on the statement of informant Valerie Gibbs. Based on her statement that her boyfriend Pollack received drugs "on a daily basis," the office simplistically multiplied an estimated 4 grams by 335 days (11 months), allowing for no days off and

9

overlooking the fact that Gibbs could not have seen such transactions every day during that period. In addition, the office stated that "according to investigative reports, the organization had at least seven individuals in addition to Harold Pollack selling crack cocaine on a street level. (J.A. at 131). The office estimated that each dealer sold two grams every day for the eleven month period. The probation officer admitted that he had no specific information regarding how often, for how long, and in what quantities the dealers sold drugs, but he relied on the two gram estimate from Gibbs and the opinion of a narcotics officer that two grams was reasonable. Finally, the probation office relied on Gibbs's statement that Normil and Henderson came to Pollack's house with "four big bags" of crack, which were about the size of her own package. Normil and Henderson argue that the description of "big" bags of crack is inconsistent with the comparison to her own bag, which contained less than two ounces of crack.

In addition, Normil and Henderson assert that it was clear error to accept without question the uncorroborated statement of Valerie Gibbs, a known drug addict. They rely upon the decisions of other circuits calling for caution and close scrutiny of testimony by addict-informants, such as United States v. Miele, 989 F.2d 659 (3d Cir. 1993). In that case, the Third Circuit reversed the district court's unquestioning reliance on information provided from an addict/informant. See also United States v. Robison, 904 F.2d at 371-72 (6th Cir. 1990). In this case, the defendants argue, the court did not make any effort to assess Gibbs's credibility. She was not brought in to testify at the sentencing, and the court made no inquiries as to her veracity. U.S.S.G. § 6A1.3(a), p.s.

The government argues that it does not bear the burden of proving the accuracy and reliability of the PSRs. Rather, the defendant has an affirmative duty to show that the information contained in the PSR is unreliable or untrue. United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990). In the absence of such a showing, the sentencing court is free to adopt the PSR's findings.

The bare and unsubstantiated opinion of a narcotics officer that two grams is a reasonable estimate has no probative value. That leaves the Gibbs statement and the "investigative reports." The information from Gibbs is a flimsy nail from which to hang estimates. Above all, the

10

probation officer's and the district court's reliance on unidentified investigative documents cannot possibly permit the district court to find specific drug amounts by the greater weight of the evidence.[3] And multiplying the estimated quantity by every day of the year does not seem a conservative estimate. Even though the standard of review is quite deferential, we hold that the district court's findings that each defendant should be held responsible for 6,420.5 grams of cocaine base cannot be sustained by the meager record before us. Accordingly, the sentences are vacated and the defendants are granted new sentencing hearings.

IV.

A.

To assist the district court at re-sentencing, we offer these additional observations. At sentencing, the court asked the probation officer to explain Normil's role in the offense. The probation officer testified that the role in the offense enhancement was based upon the statement of Gibbs:

> The Court: Just tell me about his role in the offense.
>
> Mr. Boggs: Basically, Your Honor, he worked with Mr. Floris and Mr. Henderson on an equal basis to distribute drugs in the Duck Hill area of New Bern. Okay, he was a leader of this conspiracy as outlined in the indictment. Count 2 of the indictment, he was identified as being the leader of this criminal conspiracy.
>
> The Court: What does that mean? I mean what did he do to be the leader? Did he have an army and have formation and give them orders?

_____

[3] We emphasize the fact that the probation office used these "unidentified investigative documents" as the sole basis for its assertion that 4,690 grams (out of a total of 6,420.5 grams) of crack should be attributed to each defendant.

11

Mr. Boggs: No, Your Honor.

The Court: Did he make trips to New York and buy suitcases full of cocaine and fly it down here? Tell me something about it.

. . . I know what his role in the offense was. He had more than five folks that worked for him including--

. . . They were distributing drugs. They were transporting drugs. Valerie Gibbs' role primarily was not to sell drugs but to transport drugs at Mr. Normil's direction to the home of Ronnie Pollack. Mr. Normil would often bring drugs into the home of Harold Pollack.

. . . But basically he brought drugs into the community. He hid the drugs in various places and he hid money in various places including out in Mr. Pollack's yard and various ditches, also out in the woods. And the crack cocaine which was seized by officers, the 27.1 grams of crack that Valerie Gibbs led the officers to was concealed in the woods. They had received confidential information that Mr. Normil was concealing the drugs out in the woods and they had set up surveillance early one morning and observed him bring the drugs out, go into the home of Harold Pollack. The drugs were then given to Valerie Gibbs. Valerie Gibbs left the home and transported drugs to Ronnie Pollock's home, and Mr. Normil followed at a distance but was with her. And then, of course, she was arrested and taken back and they seized additional drugs and then she began to cooperate.

(J.A. at 80-81). Based on the probation officer's testimony, the court imposed a two-level increase for manager, organizer or supervisor.

The government contends that this testimony meets the preponderance of the evidence standard. It argues that the defendants were basically street drug dealers who sold individually, but would occasionally associate. There was no evidence to show that Normil played the role of a leader over five people, or participated in greater

12

amounts of the proceeds. The probation officer offered conclusory statements that Normil was a leader, and then testified that Normil hid drugs in various places. On remand the district court should make specific identification of what evidence exists to support a leadership role enhancement for Normil.

B.

Henderson contends that the district court's findings that he was a conspirator and that his relevant conduct encompassed the entire conspiracy were clearly erroneous. In determining relevant conduct, the court must find: 1) the scope of criminal activity which the specific defendant agreed to undertake; and 2) the conduct in furtherance of, or reasonably foreseeable in connection with, the defendant's jointly undertaken criminal activity. U.S.S.G. § 1B1.3(a)(1)(B) & comment; United States v. Banks, 10 F.3d 1044, 1058 (4th Cir. 1993). Henderson argues that the district court failed to make any individualized determination of his relevant conduct. At sentencing, the probation officer recited the facts of Henderson's specific conduct, consisting of two sales. Then the officer recited the information from Gibbs's statements, including delivery of cocaine to Harold Pollack and one instance of packaging cocaine. In addition, the officer presented an alleged statement by an unnamed informant. No evidence linked Henderson to the alleged seven additional drug dealers, whose activities accounted for 73% of the quantity which the court attributed to Henderson. On that basis, the district court found Henderson responsible for all of the cocaine involved in the conspiracy.

The government argues that the court met the requirement of an "independent resolution" by expressly adopting the findings contained in the PSRs. The district court found that the PSRs showed by a preponderance of the evidence that Normil and Henderson employed at least eight dealers, who were responsible for a total of 6,420.5 grams of cocaine, and that because of the appellants' role in the conspiracy, the entire amount was foreseeable and within the scope of the plea agreements, thus no offense behavior in the conspiracy fell outside the relevant conduct of both defendants. The court is allowed to consider all reliable information. United States v. Falesbork, 5 F.3d 715, 720 (4th Cir. 1993).

13

Again, the fact that the PSR <u>states</u> that the appellants employed eight dealers, who were responsible for 6,000 grams, does not mean that it demonstrated that fact by a preponderance of the evidence. The PSR contains no more than conclusory statements. The district court conducted the hearing on these matters in a summary fashion. We, accordingly, remand for the court's specific determination of what evidence supports the relevant conduct assigned to each of the appellants.

C.

The court did not determine whether Henderson was eligible for a two or three-level reduction for acceptance of responsibility, noting that the reduction would have had no effect on his guideline range, as he would still be at or above level 40. Since Henderson's base offense level may be decreased, if he prevails on any issues in this appeal, on remand, the district court should determine whether Henderson is entitled to a two or three level reduction for acceptance of responsibility.

V.

For these reasons, we vacate the sentences imposed upon both Normil and Henderson, and remand these cases to the district court[4] for further proceedings consistent with this opinion.

<u>VACATED AND REMANDED</u>

_____

[4] We reject the defendants' requests that the re-sentencing proceedings be set before a different district judge.

14