**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 96-4657

RYAN O'NEIL LITTLE, a/k/a
Youngblood, a/k/a LA,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Richard L. Voorhees, Chief District Judge.
(CR-95-105-V)

Submitted:  October 20, 1998

Decided: November 12, 1998

Before WIDENER, MURNAGHAN, and WILLIAMS,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

William A. Webb, Federal Public Defender, G. Alan DuBois, Assistant Federal Public Defender, Raleigh, North Carolina, for Appellant.
Mark T. Calloway, United States Attorney, Gretchen C.F. Shappert, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury convicted Ryan O'Neil Little of conspiracy to possess with intent to distribute and distribute cocaine and cocaine base[1] (Count One), murder in aid of racketeering activity[2] (Count Ten), using and carrying a firearm during a drug trafficking offense or a crime of violence[3] (Counts Eleven and Twelve), and possession of ammunition by a convicted felon[4] (Count Thirteen). Pursuant to these convictions, the district court sentenced Little to two concurrent life imprisonment terms on Counts One and Ten, with which the ten-year imprisonment term on Count Thirteen would also run concurrently. On the firearms convictions, the court sentenced Little to a consecutive twenty-five year sentence. Little appeals his conviction on Count Ten and the sentence imposed on Count One. Little also seeks leave from this court to note a supplemental argument challenging the admissibility of testimony given by witnesses who testified in exchange for the Government's promises of leniency, citing United States v. Singleton, 144 F.3d 1343 (10th Cir.), vacated and rehearing en banc granted, ___ F.3d ___ (10th Cir. July 10, 1998). Finding no reversible error, we affirm.

The Government presented evidence that between October 24-28, 1993, Little, along with Andre Willis and Marshall Ray Nicholson, all known drug dealers, engaged in a crime spree throughout North Carolina. Little provided the rental car these men used to drive throughout the state with the goal of forming new business contacts with out-of-town drug dealers. If unreceptive to their business propositions, the three men would rob these dealers of their drugs and cash. All three

_____

[1] **See** 18 U.S.C. §§ 841(a)(1), 846 (1994).
[2] **See** 18 U.S.C. §§ 2, 1959(a)(1) (1994).
[3] **See** 18 U.S.C. § 924(c)(1) (1994).
[4] **See** 18 U.S.C. § 922(g)(1) (1994).

referred to this activity as "going on tour." While "on tour" in late October 1993, the three men participated in a series of robberies in Wilson, North Carolina and robbed a drug dealer, who had reportedly threatened Willis' life, in Wadesboro, North Carolina. Upon their return to Charlotte, they invaded the home of another drug dealer, Orel Mobley, and robbed him of his money, guns, drugs, and jewelry. Willis allegedly arranged for this robbery because Mobley failed to pay for three ounces of cocaine Willis had given him. Splitting the proceeds of this robbery, Little received some jewelry, an unknown quantity of cocaine and a gun; Nicholson also received some jewelry and drugs, while Willis kept the money.

The Government also presented evidence that in the early hours of October 28, 1993, Little shot and killed Robert Seitman. According to Willis, Seitman purchased crack cocaine from Little using a counterfeit twenty-dollar bill.[5] Later that evening, Little became involved in an argument with Titus Murphy over drugs. Reportedly, Murphy grabbed the drugs from Little and hit Little in the mouth. A fight ensued, culminating in Little chasing Murphy from the bar into the street and shooting him. Witnesses observed Little retrieve the drugs from Murphy's body and quickly leave the scene. Willis and Nicholson were at the scene of the shooting when Willis received a page from Little asking to meet Willis at a local nightclub. Little requested a ride to his mother's home out of town. The men agreed. Once outside of Charlotte, the trio stopped, and Little threw the gun he used to shoot Murphy into a pond. Both Willis and Nicholson testified that this was the same gun taken from the Mobley robbery.

Little first challenges his conviction under 18 U.S.C. § 1959(a), claiming that there was insufficient evidence that he was either a member of a racketeering enterprise or that he committed a violent act to maintain his position within the enterprise. Little claims the dispute between him and Murphy was personal and that the drugs involved were not related to any alleged enterprise.

Challenges to the sufficiency of the evidence are reviewed by viewing the evidence in the light most favorable to the prosecution,

_____

[5] The jury acquitted Little of Seitman's murder.

including all reasonable inferences that can be drawn from the evidence.**6** In order to prove a violation of § 1959, the Government must establish the following elements beyond a reasonable doubt:

> (1) that the organization was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that the defendant committed the alleged crime of violence, and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise.**7**

A RICO enterprise is defined as "any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate or foreign commerce."**8** The enterprise can be formal or informal, and embody the concepts of continuity, unity, shared purpose and an identifiable source.**9** Racketeering activity is defined as any act or threat involving murder, kidnaping, robbery and drug dealing.**10**

The Government sought to prove that Little murdered Murphy for the purpose of maintaining or increasing his position in an enterprise that was engaged in such racketeering activities as drug dealing and robbery. Testimony established several incidents in which members of the enterprise, including Little, threatened and robbed others. The jury heard testimony that Little murdered Murphy over a dispute that arose involving the proceeds of the enterprise, which was obtained after Little and other members of the enterprise robbed another drug dealer. Moreover, in the moments following the murder, Little sought and received aid from other members of the enterprise, who facilitated Little's rapid departure from the state and disposal of the murder weapon.

---

**6 See United States v. Williams** , 41 F.3d 192, 199 (4th Cir. 1994) (citing Glasser v. United States, 315 U.S. 60, 80 (1942)).
**7 United States v. Fiel**, 35 F.3d 997, 1003 (4th Cir. 1994) (citing United States v. Concepcion, 983 F.2d 369, 381 (2d Cir. 1992)).
**8** 18 U.S.C. § 1959(b)(2) (1994).
**9 See Fiel**, 35 F.3d at 1003.
**10 See** 18 U.S.C.A. § 1961(1) (West Supp. 1998).

When construed in the light most favorable to the Government, we find the evidence sufficient to support the jury's verdict that Little shot Murphy in furtherance of the enterprise's "reputation for violence essential to maintenance of [its] place in the drug-trafficking business."[11] Furthermore, once Little enlisted the aid of other members of the enterprise, he acted not only on his own behalf but also as a member of that enterprise to further its policies of mutual support and violent retaliatory action and to maintain his position in it.[12]

Next, Little challenges the life sentence imposed for his conviction of conspiracy to possess with intent to distribute cocaine and cocaine base. He asserts that the district court improperly applied the Sentencing Guidelines cross-reference to first-degree murder because there was no evidence that the killing of Murphy was related to the charged conspiracy. We disagree.

For sentencing purposes, the district court is permitted to consider any relevant and reliable evidence before it to determine relevant conduct.[13] Such evidence may include conduct outside the count of conviction, including acquitted conduct, such as Seitman's murder.[14] Application of cross references, as directed by the sentencing guidelines, allows the district court to measure the seriousness of the offense and to impose a sentence up to the statutory maximum for the offense of conviction.[15]

In this case, USSG § 2D1.1 (Drug Offenses) provides a cross-reference to USSG § 2A1.1 (First Degree Murder) for cases in which the victim is killed under circumstances that would constitute murder under 18 U.S.C. § 1111 (1994) (murder within federal jurisdiction).[16] In those instances, the Guidelines provide that the base offense level

---

[11] **United States v. Tipton**, 90 F.3d 861, 891 (4th Cir. 1996), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3798 (U.S. June 2, 1997) (Nos. 96-7639, 96-7686, 96-7692).
[12] **See id.**
[13] **See United States v. Bowman**, 926 F.2d 380, 381 (4th Cir. 1991).
[14] **See United States v. Carroll** , 3 F.3d 98, 102 (4th Cir. 1993).
[15] **Id.**
[16] **See U.S. Sentencing Guidelines Manual** § 2D1.1(d)(1) (1995).

of 43 for first-degree murder applies. This base offense level, regardless of a defendant's criminal history category, mandates the imposition of a life sentence.[17]

Little had already been convicted by a jury of murder and sentenced to life imprisonment; therefore, the district court need only find that Little's shooting of Murphy was more likely than not related to Little's participation in the drug trafficking conspiracy. Having already decided that the record establishes a direct connection between the murder and drug trafficking, we reject Little's attempt to be resentenced without a cross-reference for first-degree murder.

Accordingly, we affirm Little's convictions and sentences. Further, while we grant Little's motion for leave to file a supplemental argument, we reject his challenge to the Government's promises of prosecutorial immunity to its witnesses in exchange for their truthful testimony. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

_____

[17] See USSG Ch.5, Pt.A. (Sentencing Table).