**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 11-4495

ERIC RICARDO DAVIS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
James C. Fox, Senior District Judge.
(5:10-cr-00251-F-1)

Argued: March 23, 2012

Decided: May 9, 2012

Before DAVIS and DIAZ, Circuit Judges, and
Jackson L. KISER, Senior United States District Judge for
the Western District of Virginia, sitting by designation.

Vacated and remanded by published opinion. Judge Davis
wrote the majority opinion, in which Judge Diaz joined.
Senior Judge Kiser wrote a dissenting opinion.

**COUNSEL**

**ARGUED:** James Edward Todd, Jr., OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Kristine L. Fritz, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, G. Alan DuBois, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

**OPINION**

DAVIS, Circuit Judge:

Appellant Eric Ricardo Davis pled guilty to possession of ammunition by a felon, in violation of 18 U.S.C. § 922(g)(1). Davis had entered a "no-contest" plea to a robbery charge in a prior, related prosecution in state court. The pre-sentence investigation report ("PSR") prepared in the instant case determined that a cross-reference to the robbery advisory sentencing guideline was appropriate. After an evidentiary hearing at sentencing, the district court overruled Davis's timely objection, applied the robbery guideline, and imposed a sentence of 106 months' imprisonment. On appeal, Davis contends that the district court committed procedural sentencing error because insufficient evidence supported the cross-reference to the robbery guideline.

We conclude that, although the Government may have presented sufficient evidence to support the cross-reference to the robbery guideline, the district court failed to resolve criti-

cal disputed issues of fact necessary to its application of the Advisory Sentencing Guidelines and our appellate review thereof. Accordingly, we vacate the judgment and remand the case for further proceedings.

I.

A.

The state and federal charges against Davis at issue in this appeal arose out of a shooting that occurred in 2010. At the time of the shooting, Davis was a twenty year-old member of the Valentine Day Bloods (a subset of the United Blood Nation). On February 11, 2010, Davis and another man approached seventeen year-old Octavious Wilkins as he walked near a high school in Rocky Mount, North Carolina. Davis believed that Wilkins was involved in an incident two days earlier in which Davis had been shot in the leg.

At the time Davis and his companion approached Wilkins, Wilkins was talking on a cellular telephone he was carrying. A confrontation ensued, during which Davis and his companion brandished weapons at Wilkins. Ultimately, they discharged their firearms as Wilkins fled from them. Two rounds struck Wilkins in the left leg. In the course of this incident, Davis either took Wilkins's cell phone directly from him while threatening him with a .45 caliber handgun, or he retrieved the cell phone from the ground after Wilkins dropped it while fleeing. Crucial to the application of the Advisory Sentencing Guidelines is the manner in which Davis came to possess Wilkins's cell phone.

Soon after the shooting, local police arrested Davis. He was found to have in his possession a round of .45 caliber ammunition (matching shell casings at the scene of Wilkins's shooting) and Wilkins's cell phone.

B.

The day after the shooting, February 12, 2010, Davis was charged with two state offenses for his role in the incident: common law robbery and possession of a firearm by a felon. Before his plea hearing for these state offenses, Davis was also indicted in the instant case in the Eastern District of North Carolina on one count of possession of ammunition by a felon, in violation of 18 U.S.C. § 922(g)(1).

On September 22, 2010, in state court, Davis pled "no contest" to common law robbery and prohibited possession of a firearm. He was sentenced to fourteen to seventeen months' imprisonment. Thereafter, Davis appeared in federal court and, without a plea agreement, entered a guilty plea to the possession of ammunition offense.

A PSR was prepared by a probation officer for Davis's federal sentencing. In computing the advisory sentencing guideline range for the possession of ammunition charge, the PSR first noted the applicability of U.S. Sentencing Guidelines Manual (U.S.S.G.) § 2K2.1(c)(1)(A), because Davis's possession of ammunition was "in connection with the commission of another offense."[1] Pursuant to this provision, the PSR

---

[1]U.S.S.G. § 2K1.1(c)(1)(A) provides:

(c) Cross Reference

(1) If the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense, apply—

(A) § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above . . . .

The commentary to the above guideline defines "[a]nother offense" as "any Federal, state, or local offense . . . regardless of whether a criminal charge was brought, or a conviction obtained."

determined that Davis had indeed committed "another offense," i.e., robbery, U.S.S.G. § 2B3.1, which prescribes a base offense level of 20. The PSR then added seven offense levels for the discharge of a firearm, four levels for serious bodily injury to the victim, and two levels for physical restraint of a person to facilitate commission of the offense, summing to a base offense level of thirty-three. A three-level reduction was recommended for acceptance of responsibility, resulting in a total offense level of thirty. With Davis's criminal history category III, the final guidelines range was calculated at 121 to 151 months. The PSR noted, however, that Davis's § 922(g)(1) offense has a statutory maximum imprisonment term of 120 months. The guidelines range was therefore ultimately determined to be ten years, the statutory maximum.

Davis timely objected to the PSR's cross-reference to robbery. In response, the probation officer recounted the factual premise for her decision:

> [T]he investigation revealed that Davis and another individual approached the victim, brandished a gun, and stole the victim's cellular phone. Davis and the other individual forced the victim to walk with them a short distance with the gun placed to his back. When the victim began to run, Davis shot toward the victim, hitting him twice in the leg. When questioned by authorities, Davis admitted he took the victim's cell phone and shot toward the victim when he fled. Moreover, the victim's cell phone was found on Davis' person. Furthermore, on September 22, 2010, Davis was convicted of state charges of Common

---

Section 2X1.1(a), in turn, directs application of "[t]he base offense level from the guideline for the substantive offense [here, robbery], plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty."

Law Robbery and Possession of a Firearm by a Felon for conduct related to the instant offense.

J.A. 77. Thus, the probation officer concluded that no change was warranted and the PSR was submitted to the court.

During Davis's sentencing hearing, Davis elaborated on his objection to the robbery cross-reference, asserting through counsel (and consistent with his "no contest" plea, *see infra*) "he did not rob Mr. Wilkins on the date in question." J.A. 33. Davis argued that the appropriate cross-referenced offense should be aggravated assault ("because what happened here was an assault," *id.*), which carries a base offense level of fourteen. *See* U.S.S.G. § 2A2.2. With the PSR's other adjustments applied to that base level, Davis argued, the appropriate final offense level should be twenty-four and his proper advisory guidelines sentencing range should be forty-six to fifty-seven months rather than 120 months.

The Government argued that the cross-reference to robbery was appropriate and called FBI Agent John Spears to testify in support of its contention. Spears had "summarized a compilation of reports" concerning the incident but was not present for any of the interviews. J.A. 40.

Spears's testimony at sentencing was conflicting. As recounted by Spears, at the hospital shortly after he was shot, Wilkins gave a statement to a local police officer in which he indicated that he ran as his assailants approached, that his assailants "never said anything before or after the shooting," and that "his cell phone got taken from him by the people with the guns." J.A. 42, 36. A second local officer interviewed Wilkins the next day and recorded Wilkins as saying that "he dropped his cell phone while running away from whoever was shooting at him." J.A. 43. During this second interview, Wilkins also claimed that his assailants "walked up behind him, pointed a gun in his back and told him to walk with them." J.A. 44.

Adding to this muddled account, Agent Spears also testified that in *Miranda*–compliant interviews after the incident, Davis himself stated that he "approached [Wilkins] and he took his cell phone and ended up shooting him." J.A. 37. Specifically, when asked to "summarize what [Davis] told detectives" after his arrest, Spears replied:

> [H]e told the detectives that several days prior to this shooting that occurred on the 11th, that he had been shot himself by an unidentified black male with a shotgun with birdshot.
>
> Earlier that day, prior to him actually shooting Octavious Wilkins, he was told that the guy who shot him two days earlier was in the vicinity of the high school.
>
> Eric Davis and other individuals responded to the area and began looking for him. They saw – Eric Davis saw Octavious Wilkins, thought that that was the individual that had shot him two days earlier, and at that point that's when he approached him and he took his cell phone and ended up shooting him.

*Id.*

On cross-examination, Agent Spears confirmed that no jewelry was taken from Wilkins during the incident, nor was the nearly $50 in cash he had at the time taken, thus bolstering the defense assertion that robbery was not Davis's motivation or purpose in confronting Wilkins. The Government then confirmed, on re-direct, that neither Wilkins nor the owner of the cell phone, his girlfriend, had given Davis the phone "willingly." J.A. 44.

In argument, counsel for Davis asserted that based on the evidence before the court, "the clear inference is that Wilkins dropped the cell phone while running away" and that Davis

had "picked it up but didn't take it from him through the course of a robbery." J.A. 46. The Government responded that if Wilkins dropped the phone while fleeing gunfire and Davis merely picked it up, a robbery had still taken place:

> [The cell phone] was dropped when someone was shooting at the victim. He didn't willingly give it up . . . the fact that he dropped it and then the defendant took it still makes it robbery because he was running from gunfire. The fact that it gets dropped that's the same as if he had told the defendant to give it . . . to him . . . He wouldn't have dropped it but for being shot [at.] Defendant took property after firing at somebody.

*Id.*

The exchange between the district court and Davis's counsel that followed focused on the significance of the fact that Davis had been convicted of robbery in state court. Counsel was careful to emphasize that Davis had entered "an *Alford* plea," "but he did not plead guilty" to the offense. J.A. 48.[2] The court responded, "Well, I wasn't there and the record shows what it shows. I'm going to overrule your objection [to the cross-reference]." *Id.*

In response to this apparent reliance on the mere fact of conviction, Davis continued (through counsel), "I just want to make crystal clear what my objection was and that is . . . robbery is a separate crime from larceny . . . . My objection was that the probation officer picked the wrong crime under the facts of this case." *Id.* When the court answered, "Well, he was convicted of robbery," Davis noted again that the state conviction was not based on an admission by Davis "that he

---

[2]In fact, Davis entered a "no contest" plea rather than an *Alford* plea but, as discussed *infra* p. 16, for present purposes, we assume that North Carolina law treats such pleas identically.

robbed anybody." *Id.* After a brief pause, the objection was formally overruled, with the court observing, "It's a very close call." *Id.* The court then entertained allocution from the parties, analyzed the 18 U.S.C. § 3553(a) sentencing factors, and ultimately adopted the Government's recommendation for a sentence at the top of the robbery guideline range, sentencing Davis to 106 months in prison (120 months, reduced by the fourteen months Davis had already spent in prison on the interrelated state charges arising out of the incident) to be served concurrently with the remainder of Davis's state sentence.

Davis filed a timely appeal, arguing that the district court erred in calculating his sentencing guidelines range by adopting the cross-reference to robbery. He asserts that the evidence before the district court did not establish that he in fact engaged in conduct during the shooting incident, accompanied by the requisite intent, which comprised the essential elements of common law robbery under North Carolina law.

## II.

We review the sentence imposed by a district court under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 40 (2007). We review factual findings for clear error, and legal conclusions de novo. *United States v. Harvey*, 532 F.3d 326, 336 (4th Cir. 2008). As we summarized in *United States v. Lewis*:

> *[A] sentence based on an improperly calculated guidelines range will be found unreasonable and vacated.* Furthermore, because a correct calculation of the advisory Guidelines range is the crucial starting point for sentencing, an error at that step infects all that follows at the sentencing proceeding, including the ultimate sentence chosen by the district court.

606 F.3d 193, 201 (4th Cir. 2010) (internal quotation marks and citations omitted; emphasis added).

"A sentencing court may apply [a Sentencing Guidelines] cross-reference . . . to conduct amounting to a violation of state law." *United States v. Carroll*, 3 F.3d 98, 103 (4th Cir. 1993); *see supra* n.1. It is well-settled that the Government has the burden to prove a cross-referenced offense by a pre-ponderance of the evidence under U.S.S.G. § 2K2.1(c)(1)(A). *United States v. Heater*, 63 F.3d 311, 322 (4th Cir. 1995); *see also Carroll* 3 F.3d at 100 n.3 (noting the preponderance of the evidence standard applicable for cross-referenced offense of aggravated assault).

A.

Davis argues that the sentence imposed by the district court, pursuant to a guideline range calculated on the basis of a cross-reference to robbery, was procedurally unreasonable, framing the issue as follows:

> Whether the district court committed procedural error by mistakenly calculating the advisory guide-line range, where the court cross-referenced the guideline provision for robbery, even though the theft occurred independent of and after the use of force.

Appellant's Br. 2. He requests that we vacate the judgment and remand this case for sentencing under a cross-reference to the aggravated assault guideline range, the only underlying offense, he asserts, that is supported by a preponderance of the evidence. Davis concedes that his possession of Wilkins's cell phone at the time of his arrest would support a charge of larceny. This is so inasmuch as, according to the defense ver-sion of the incident, after he shot the fleeing Wilkins (who dropped the phone), he picked it up, thereby depriving (the now absent) Wilkins of the phone.

For its part, the Government insists that under the elements of the North Carolina common law robbery offense, both the

"gun-to-the-head" version of the incident and the "dropped-phone-while-fleeing" version of the incident justify application of the robbery cross-reference by the district court.

Thus, the parties seek to draw us into a nice dispute over the proper interpretation of the North Carolina law of common law robbery. But that is a dispute to be properly resolved by the district court in the first instance, which has not happened here. Even more fundamentally in our judgment, the correct application of the guidelines in this case hinges on *factual determinations*, which are also for the district court to make. *See United States v. Benkahla*, 530 F.3d 300, 312 (4th Cir. 2008), *cert. denied*, 555 U.S. 1120 (2009) ("Sentencing judges may find facts relevant to determining a Guidelines range by a preponderance of the evidence, so long as that Guidelines sentence is treated as advisory and falls within the statutory maximum authorized by the jury's verdict.").

### B.

A brief review of the relevant principles of state law reveals considerable elasticity in North Carolina's definition of robbery. The North Carolina Supreme Court has specified that "the elements of common law robbery are the felonious nonconsensual taking of money or personal property from the person or presence of another by means of violence or fear." *State v. Bell*, 603 S.E.2d 93, 117 (N.C. 2004) (internal quotation marks and citations omitted).[3]

Digging deeper into the doctrine, we discover that North Carolina law is predictably nuanced in situations where property is taken during or following a violent altercation that is motivated by reasons entirely unconnected to the purloined

---

[3]Davis urges a slightly different definition of robbery: "a taking of property by use or threat of force," rather than by means of fear. Appellant's Br. 15 (citing *State v. Hope*, 345 S.E.2d 361, 363 (N.C. 1986) (discussing "N.C.G.S. § 14-87(a), armed robbery")).

property itself. Davis argues that under *State v. Richardson*, robbery in North Carolina requires—at its core—the intent to deprive the rightful owner of property at the time of the taking. 302 S.E.2d 799, 803 (N.C. 1983). In *Richardson*, the defendant attacked a number of people in a wooded riverside area during a violent outburst. *Id.* at 801-02. When menaced with a stick that Richardson was brandishing, one of his victims "threw his green duffel bag at [Richardson] in self-defense." *Id.* at 801. When the victim tried to retrieve his bag, Richardson "threatened him again" and the victim abandoned the bag. *Id.* When he returned to the scene two days later, the victim found some personal items from his bag, but the bag itself was gone and $17 was missing from his wallet. *Id.*

The North Carolina Supreme Court vacated Richardson's conviction for robbery with a dangerous weapon, on the ground that at the time the victim was "parted with his property," the defendant did not have the requisite intent to deprive him of it. *Id.* at 803. The court elaborated that "the defendant's use of force or intimidation must necessarily precede or be concomitant with the taking before the defendant can properly be found guilty of armed robbery. That is, the use of force or violence must be such as to *induce* the victim to part with his or her property." *Id.* (emphasis in original). Because the attacker's "initial threats were not made to induce [the victim] to part with his property," the conviction for armed robbery was in error. *Id.* Davis argues that here, as in *Richardson*, he did not use a threat to induce Wilkins to hand over his cell phone, as the evidence shows the phone was merely dropped and picked up by Davis after Wilkins had fled. Davis's motivation and purpose for the attack, he says, plainly was revenge for an earlier attack by Wilkins.

In response, the Government argues that *Richardson* has been clarified by the North Carolina courts to address only situations where a "significant lapse of time between the use of violence and the taking of the property" has occurred. Government's Br. 22; *see State v. Hope*, 345 S.E.2d 361, 364

(N.C. 1986) ("In this jurisdiction to be found guilty of armed robbery, the defendant's use or threatened use of a dangerous weapon must precede or be concomitant with the taking, or be so joined with it in a continuous transaction by time and circumstances as to be inseparable."). The Government says *Hope* illustrates that the material fact in *Richardson* was that the defendant "first formed the intent to permanently deprive the owner of his property" "well after his use of a dangerous weapon." *Id.* The Government argues that no such lapse occurred here, and that Davis's conduct is more analogous to cases in which North Carolina has "rejected . . . 'belated intent' and 'mixed-motive' arguments." Government's Br. 14; *see, e.g.*, *State v. Green*, 365 S.E.2d 587, 605 (N.C. 1988), *cert. denied*, 488 U.S. 900 (1988) (stating, "provided that the theft and the force are aspects of a single transaction, it is immaterial whether the intention to commit the theft was formed before or after force was used on the victims"); *State v. Fields*, 337 S.E.2d 518, 524 (N.C. 1985) (stating that "mixed motives do not negate actions that point undeniably to a taking inconsistent with the owner's possessory rights").

While these and similar cases have affirmed convictions in various circumstances where the theft involved was clearly not the initial motive for the use of violence, most of these cases also involve takings made immediately from the person of the assault victim after the use of force. *See, e.g.*, *Green* (affirming robbery conviction where defendant removed wallets from victims murdered during personal dispute); *State v. Bates*, 330 S.E.2d 200 (N.C. 1985) (affirming robbery conviction where defendants took a rifle from the unconscious victim, after beating him during a property dispute); *State v. Rasor*, 356 S.E.2d 328 (N.C. 1987) (affirming a robbery conviction where defendant took a victim's wallet as an "afterthought" immediately after mortally assaulting him); *State v. Flaugher*, 713 S.E.2d 576 (N.C. Ct. App. 2011) (affirming a robbery conviction where defendant demanded and took the victim's wallet after attacking him for refusing to drive her into town).

To summarize, while *Richardson* emphasizes the elements of inducement and specific intent as crucial to a robbery offense, the North Carolina appellate courts have recognized in *Fields*, *Hope*, and other cases that inducement can be established even in the absence of a premeditated intention if a theft is perpetrated within a "single, continuous chain of events" that involves the use of force. *Flaugher*, 713 S.E.2d at 586; *Hope*, 345 S.E.2d at 306-07. The North Carolina Supreme Court has also noted the importance of fact-finding in these complex cases:

> What defendant's actual intentions were . . . and whenever they were formulated was a dilemma for the jury. When the circumstances of the alleged armed robbery reveal defendant intended to permanently deprive the owner of his property and the taking was effectuated by the use of a dangerous weapon, it makes no difference whether the intent to steal was formulated before the use or after it, so long as the theft and the use or threat of use of force can be perceived by the jury as constituting a single action.

*Fields*, 337 S.E.2d at 525.

## C.

This emphasis on factfinding is particularly salient to the present case, where there are two plausible factual scenarios suggested in the record by which Davis might have come into possession of Wilkins's phone.

First, as to the straightforward scenario of a direct "taking of . . . property from the person," *Bell*, 603 S.E.2d at 117, the record includes two claims that the cell phone was taken from Wilkins's person directly: (1) "[witnesses'] statements," cited in the PSR, that Davis and his companion "forced the victim to walk with them at gunpoint while they went through his

pockets," J.A. 68, allegations not raised by the Government during the sentencing hearing; and (2) Agent Spears's testimony based on the reports concerning Davis's own post-arrest admission in which Davis stated that he "took [Wilkins's] cell phone and ended up shooting him." J.A 37.

Second, evidence against such a direct taking consists of Wilkins's own statements on the day of and after the shooting that he ran away when he was approached and dropped the phone, and Davis's assertion in federal court (consistent with his "no contest" plea) that he "did not rob" Wilkins during the shooting. J.A. 33. In light of this conflicting evidentiary record, it was incumbent upon the district court to make a finding that indicated clearly how it resolved the parties' evidentiary dispute. *See, e.g.*, *United States v. Chandia*, 514 F.3d 365, 376 (4th Cir. 2008) (vacating sentence and remanding case because "the [district] court must resolve . . . factual disputes that it deems relevant to application of the [terrorism] enhancement"); *see also United States v. Chandia*, ___ F.3d ___, 2012 WL 1139070 (4th Cir. Apr. 6, 2012) (affirming application of terrorism enhancement after third appeal).

In lieu of resolving the conflicting evidentiary showings, however, the district court seemingly relied solely on the fact of Davis's robbery conviction in state court based on his "no contest" plea. As Davis observes, "the repeated mention of the prior conviction suggests the court overruled the objection [to the cross-reference] based exclusively on the existence of a conviction obtained by an *Alford* plea." Appellant's Reply Br. 9. When reminded by Davis's counsel that Davis effectively denied that his conduct during the shooting amounted to robbery, the district judge noted, "Well, he was convicted of robbery." J.A. 48. These comments strongly indicate that the district court made the determination that Davis had committed "another offense" under U.S.S.G. § 2K1.1(c)(1)(A) *as a matter of law* rather than *as a matter of fact*, and focused on evidence of a *conviction* rather than on evidence of *conduct*.

Notably, however, in its arguments both before the district court and on appeal before us, the Government has not contended that the sentencing guidelines were correctly applied and that the sentence is reasonable based simply on the state court conviction resting on a "no contest" plea. To the contrary, at oral argument, the Government relied primarily on the fact that the district court adopted the PSR. But therein lies much of the difficulty; some of the conflicting evidence which requires resolution was indeed contained in the PSR. In addition, the Government (recognizing its evidentiary burden) called Agent Spears to testify at sentencing and his testimony aided the defense's arguments as much as it aided the Government's.

Davis contends that the district court's approach, that is, its reliance on the state court conviction resting on the "no contest" plea, is prohibited by the reasoning of *United States v. Alston*, 611 F.3d 219 (4th Cir. 2010), in which we held that an enhanced sentence under the Armed Career Criminal Act may not rest on a conviction based on a guilty plea tendered pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), unless "the defendant's own admissions or accepted findings of fact confirm[ ] the factual basis of a valid plea." 611 F.3d at 226. No case has been brought to our attention in which a court has applied the reasoning of *Alston* to a sentencing guidelines cross-reference analysis. Nevertheless, the concerns animating our *Alston* precedent have currency in the present context.

Indeed, under North Carolina law (in contrast to some other jurisdictions), a "no contest" plea is treated precisely as an *Alford* plea under the circumstances here:

> Thus, the record is muddled as to whether defendant entered a no contest plea or a guilty plea pursuant to *Alford*. However, we hold that for purposes of our analysis in the instant case that there is no material difference between a no contest plea and an

> *Alford* plea. *See State v. Alston*, 534 S.E.2d 666, 669 (2000) ("[A]n '*Alford* plea' constitutes a guilty plea in the same way that a plea of nolo contendere or no contest is a guilty plea." (quotation and citation omitted)); *see also Alford*, 400 U.S. at 37 (stating that there is no "material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence . . . ."). A defendant enters into an *Alford* plea when he proclaims he is innocent, but "intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." *Id.* Implicit in a plea of no contest is the recognition that although the defendant is unwilling to expressly admit guilt, he is faced with "grim alternatives" and is willing to waive his trial and accept the sentence. *Id.* at 36.

*State v. Chery*, 691 S.E.2d 40, 44 (N.C. Ct. App. 2010) (some citations altered). As mentioned, unlike the law in some states, in North Carolina, a defendant who pleads "no contest" does not admit any facts alleged in the charging document. *Compare id. with, e.g.*, *United States v. De Jesus Ventura*, 565 F.3d 870, 879 (D.C. Cir. 2009) ("In Virginia, a defendant who pleads nolo contendere admits . . . the truth of the charge-that is, the crime charged in the indictment.") (citing *Commonwealth v. Jackson*, 499 S.E.2d 276, 278 (Va. 1998) ("[B]y entering a plea of nolo contendere, the defendant 'implies a confession . . . of the truth of the charge . . . .'") (first omission in original)).

To be sure, for some purposes, a conviction pursuant to a "no contest" plea or an *Alford* plea will undoubtedly comport with the purposes of the advisory sentencing guidelines, and such a conviction will enable the Government to satisfy its burden at sentencing in many cases. *See, e.g.*, *United States v. King*, ___ F.3d ___, 2012 WL 745535 (4th Cir. Mar. 8, 2012) ("[W]e first consider whether a district court's accep-

tance of an *Alford* plea qualifies as an 'adjudication of guilt' under U.S.S.G. § 4A1.2(a). We conclude that it does. A court's acceptance of an *Alford* plea, like an acceptance of a guilty plea, indisputably qualifies as an 'adjudication.'").

In its Rule 28(j) submission made just before oral argument, the Government, citing *King*, sought to retreat from its prior silence on the issue of whether the mere fact of Davis's "no contest" plea in state court supports the district court's sentencing guidelines cross-reference. We find, however, the issue in *King* (i.e., what constitutes an "adjudication" giving rise to a prior conviction for computing *criminal history*) easily distinguishable from the issue here, namely, whether Davis committed "another offense" "in connection with" his prohibited possession of ammunition. *See supra* n.1. Notably, in the state court "Transcript of Plea" submitted by the Government to us (but not to the district court), one of the questions put to Davis reads, "Are you in fact guilty?" The answer blank for that question is not filled in.

Accordingly, under the circumstances presented here, we hold that Davis's "no contest" plea to common law robbery could not alone provide the necessary evidentiary basis to support application of the robbery cross-reference. What is necessary is *factfinding regarding Davis's conduct*. If Davis is to be sentenced as if he committed, not just the passive, status offense of unlawful possession of a single round of ammunition, but a robbery, the Sentencing Reform Act requires that the sentencing court make the findings necessary to justify such a result. *Cf. Setser v. United States*, 566 U.S. ___, slip op. at 2 (Mar. 28, 2012) (Breyer, J., dissenting) ("[T]he [Sentencing Reform Act] instructs the [Sentencing] Commission to write Guidelines that inevitably move in the direction of increased 'real offense' sentencing . . . . In principle, real offense sentencing would impose the same sentence upon different offenders who engage in the same real conduct irrespective of the statutes under which they are charged."). The question here is, "What did Davis do?" (as shown by a pre-

ponderance of the evidence); the question is not, as the district court seems to have concluded, "Of what crime was Davis convicted?" Indeed, this focus on *conduct*, *see id.*, is entirely consistent with the long-settled principle that *even conduct of which a defendant is acquitted may support a guideline cross-reference. See, e.g.*, *United States v. Young*, 609 F.3d 348, 357 (4th Cir. 2010) ("In order to select a sentence within a jury-verdict-authorized maximum sentence, the district court must make relevant factual findings based on the court's view of the preponderance of the evidence. When making those factual findings, the district court may consider acquitted conduct, so long as the court determines that the conduct was established by a preponderance of the evidence."); *see also supra* n.1.

### III.

For the foregoing reasons, we are unable to conduct an adequate review of the district court's application of the sentencing guidelines. In light of the nuanced North Carolina precedents, one view of the evidence unambiguously supports the proposition that the theft of Wilkins's cell phone was merely juxtaposed to an unrelated confrontation, a further crime of convenience lacking a sufficient nexus with the attack that preceded it. A competing view of the evidence unambiguously supports the proposition that the cell phone was obtained (and that the possession of ammunition offense occurred) in the course of a robbery. In any event, Davis's "no contest" plea to common law robbery is not, by itself, sufficient under the circumstances here to support the court's application of the robbery guideline.

If on remand, as the district court intimated ("It's a very close call," J.A. 48), the evidence is in such equipoise that the Government cannot satisfy its burden of proof, then the court shall not apply the robbery cross-reference. If instead the court is satisfied that evidence of sufficient reliability has been presented to support the cross-reference to the robbery

guideline, then with clear findings setting forth its reasons for so concluding, the robbery cross-reference would be fully justified on this record.

Accordingly, for the reasons set forth, we vacate the judgment and remand this case for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

KISER, Senior District Judge, dissenting:

The majority believes the District Court did not make the requisite findings of fact to support its decision to overrule Davis's objection to the Presentence Report ("PSR") and sustain the Probation Officer's cross-reference to Robbery pursuant to U.S.S.G. § 2K1.1(c)(1)(A). Because I believe the District Court did make the necessary findings for an appropriate review by this Court, I do not believe a remand is necessary. I respectfully dissent.

I.

According to the PSR:

Based on witness statements, Davis and an unidentified male approached the victim, pulled a gun, and forced the victim to walk with them at gunpoint while they went through his pockets. Thereafter, the victim fled and Davis and the other individual began shooting at him. Witnesses estimated five or six shots were fired. . . . When they located the victim, Davis took the cellular telephone the victim was using and he shot the victim three or four times after he fled.

. . .

In the case-at-bar, the investigation revealed that Davis and another individual approached the victim, brandished a gun, and stole the victim's cellular phone. Davis and the other individual forced the victim to walk with them a short distance with the gun pressed to his back. When the victim began to run, Davis shot toward the victim, hitting him twice in the leg. When questioned by the authorities, Davis admitted he took the victim's cellular phone and shot toward the victim when he fled. Moreover, the victim's cellular phone was found on Davis's person. Furthermore, on September 22, 2012, Davis was convicted of state charges of Common Law Robbery and Possession of a Firearm by a Felon for conduct related to the instant offense.

J.A. 68, 77. Based on these facts, the Probation Officer properly calculated Davis's sentence with the cross-reference to Robbery. She then computed the base offense level and ultimately the Guidelines sentencing range.

The District Court entertained evidence which supported the Probation Officer's investigation and account of the underlying offense. Davis objected to the use of the Robbery cross-reference on the basis of the underlying offense. The District Court considered the objection, overruled it, adopted the PSR, and imposed a sentence within the Guidelines. *See* J.A. 18, 23. In so doing, the District Court rejected Davis's proffered version of the facts. By adopting the PSR, *see ante* at 16, which included a factual recitation the majority concedes supports a cross-reference to Robbery under North Carolina law, *see id.* at 19-20, I believe the District Court made the necessary factual finding to support its decision to cross reference the Robbery Guideline. Moreover, I believe the applicable standard of review requires that this Court find as such. *See United States v. Bolden*, 325 F.3d 471, 479 n.5 (4th Cir. 2003) (citing *United States v. Brown*, 314 F.3d 1216, 1221 (10th Cir. 2003)) (holding that, on review of sentencing

issues, the evidence should be viewed in the light most favorable to the District Court's determination).

The District Court's factual findings are contained within the PSR; the rulings of the District Court explicitly rejected Davis's evidence and argument and adopted the facts in the PSR. I would affirm the District Court.

## II.

Additionally, I feel compelled to comment on what I believe to be the majority's misuse of *United States v. Alston*, 611 F.3d 219 (4th Cir. 2010), to support its holding that guilty pleas entered pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), may not be considered by District Courts for purposes of cross-references at sentencing. The majority's approach disregards the rationale underlying *Alston*. That case stands for the proposition that, *when the fact of conviction alone does not give a court sufficient information to support a sentencing enhancement*, then the court may consider *Shepard*-approved documents to determine whether an Armed Career Criminal Act ("ACCA") enhancement applies, but it may *not* consider a defendant's guilty plea pursuant to *Alford*.

In the present case, *Alston's* admonition is not applicable. Although *Alston* is an ACCA case, the majority uses it in the present context, so I assume—but do not agree—that it has bearing in the cross-referencing context. Here, unlike in *Alston*, a modified-categorical approach to the underlying charge is unnecessary. As the *Alston* court explicitly stated, "the Supreme Court has held that ACCA 'generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense' when determining whether a prior conviction qualifies for the Act's sentencing enhancement." *Alston*, 611 F.3d at 224 (quoting *Taylor v. United States*, 495 U.S. 575, 602 (1990)). If *Alston's* holding in the ACCA context is to be used in the cross-referencing context —which the majority's use of *Alston* necessarily implies—

then this Court need not go any further than the "fact of con-viction and the statutory definition of the . . . offense." Davis's underlying conviction was for common law robbery. *See* N.C. Gen. Stat. § 14-87.1 (West 2011). This charge will *always* be a robbery, whereas Alston's underlying charge for second-degree assault would not *always* qualify as a "violent felony" under the ACCA. *See Alston*, 611 F.3d at 222-23 (quoting *United States v. Kirksey*, 138 F.3d 120, 125 (4th Cir. 1998)). Under *Alston*, therefore, the present case should *not* turn on the facts or the nature of pleas. But the majority holds that it does.

I fear that the majority's tacit extension of *Alston* takes this Court too far down a road it does not wish to travel. If an *Alford* plea to a crime which categorically is robbery is not sufficient to hold that a robbery was committed, the only recourse will be to conduct mini-trials whenever an *Alford* plea is entered. This is exactly the morass that *Taylor* and *Shepard* cautioned against. *See, e.g.*, *United States v. Shep-ard*, 544 U.S. 13, 36 (2005) ("*Taylor* also sought to avoid the impracticality of mini-sentencing-trials featuring opposing witnesses perusing lengthy transcripts of prior proceedings."). I am regrettably forced to conclude that the majority's holding drags District Courts further into that very morass. If a court is able to determine whether a sentencing enhancement should apply looking only to the "fact of conviction and the statutory definition of the . . . offense," I do not believe the nature of the guilty plea in question should enter into the analysis.

I believe the District Court should be affirmed.