**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 13-4177**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TROY LAMONT CHISOLM,

Defendant - Appellant.

_____

Appeal from the United States District Court for the District of
South Carolina, at Beaufort.   Sol Blatt, Jr., Senior District
Judge.   (9:05-cr-00428-SB-1)

_____

Argued:  May 15, 2014               Decided:  July 29, 2014

_____

Before GREGORY, AGEE, and KEENAN, Circuit Judges.

_____

Affirmed by unpublished opinion.   Judge Gregory wrote the
opinion, in which Judge Agee and Judge Keenan joined.

_____

**ARGUED:** Ann Briks Walsh, OFFICE OF THE FEDERAL PUBLIC DEFENDER,
Charleston, South Carolina, for Appellant.   Nathan S. Williams,
OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South
Carolina, for Appellee.   **ON BRIEF:** William N. Nettles, United
States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia,
South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

Following his conviction for being a felon in possession of a firearm, Troy Chisolm appeals his sentence on the ground that the district court improperly categorized a prior conviction for Criminal Domestic Violence of a High and Aggravated Nature ("CDVHAN") as a crime of violence under the sentencing guidelines. Because we find that the offense was categorically a crime of violence, we affirm.

I.

On April 13, 2005, Troy Chisolm was charged in a one-count federal indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), 924(e)(1). He was found guilty after a trial on July 17, 2006, and was sentenced to 210 months' imprisonment. Chisolm successfully filed a motion to vacate pursuant to 28 U.S.C. § 2255, and he was resentenced on February 27, 2013 to 103 months' imprisonment.

In determining Chisolm's applicable guideline range at his resentencing, the presentence report ("PSR") categorized an August 2, 2001 South Carolina conviction for CDVHAN as a crime of violence under the guidelines, resulting in a base offense level of 20. After the relevant adjustments were accounted for,

2

his total offense level was 24, and, with a criminal history category of V, Chisolm's guideline range was 92 to 115 months.

In order to establish Chisolm's prior CDVHAN conviction, the Government submitted the charging document and a sentencing sheet from the state court. The sentencing sheet contains checkboxes for the state court to indicate whether a defendant is being sentenced pursuant to a plea or a trial, and also reads, in relevant part, as follows: "In disposition of the said indictment comes now the Defendant who was □ CONVICTED OF or □ PLEADS TO: CDVHAN . . . ." J.A. 37. None of these boxes were checked on Chisolm's form, although the court did check a box indicating that the charge is "[a]s [i]ndicted," and that the plea is by "[r]ecommendation by the State," as opposed to being "Without Negotiations or Recommendation," or by "Negotiated Sentence." Id. Chisolm, his attorney, and the prosecutor each signed the form, which pronounced that Chisolm's sentence for CDVHAN was 5 years, suspended upon 90 days' imprisonment.

Chisolm objected at his resentencing to the classification of CDVHAN as a crime of violence, arguing that the offense was categorically not a crime of violence. Using the modified categorical approach, the district court looked at the charging document for the CDVHAN conviction. Noting that the charging document alleged that Chisolm "choke[d] [the victim] around her

3

neck with his hands causing her to seek medical attention," J.A. 36, the district court overruled the objection on the ground that "when you choke somebody with enough force [that] they have to seek medical attention, . . . that's sufficient to show that physical force was used, and that makes it a violent felony," J.A. 46. Chisolm timely appealed his sentence, and this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

Chisolm's primary argument[1] on appeal is that the district court erred in categorizing his CDVHAN conviction as a crime of

---

[1] Chisolm also argues that there was insufficient evidence that he was convicted of CDVHAN due to the state court's failure to check the boxes on his sentencing sheet indicating whether he was convicted by trial or whether he pled guilty. We review the factual question of whether Chisolm was actually convicted of CDVHAN for clear error. See United States v. Hall, 664 F.3d 456, 462 (4th Cir. 2012). Chisolm, his attorney, and the attorney for the Government all signed the sentencing sheet indicating that Chisolm was being sentenced for having violated CDVHAN, as indicted, by recommendation of the Government. We are thus not left with a "definite and firm conviction that a mistake has been committed," id., viewing the evidence in its entirety, as to the finding that he was convicted of CDVHAN — whether by plea or by trial. We also note that our prior decision in United States v. Davis, 679 F.3d 177, 187 (4th Cir. 2012), wherein we vacated the application of a guideline on the ground that the defendant's "no contest" plea did not alone provide the necessary evidentiary basis for the guideline, is inapposite here. In Davis, the guideline at issue applied even in circumstances where there was no conviction, and the relevant inquiry centered on the defendant's conduct. Id. The guideline here, however, requires that the defendant actually sustain a felony conviction of a crime of violence. See U.S.S.G. (Continued)

4

violence under the sentencing guidelines. Chisolm's base offense level was determined pursuant to U.S.S.G. § 2K2.1(a)(4),[2] which provides for a base offense level of 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a crime of violence." The term "crime of violence" is defined for the purposes of § 2K2.1 as it is in the career offender guideline, § 4B1.2(a):

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). See U.S.S.G. § 2K2.1 cmt. n.1 (2012). The first clause is known as the "force clause." See United States v. Toyer, 414 F.App'x 584, 592 (4th Cir. 2011) (unpublished). The second clause consists of several enumerated crimes, as well

---

§ 2K2.1(a)(4)(A). Thus, Davis is not controlling. See also United States v. Vinton, 631 F.3d 476, 486 (8th Cir. 2011) (rejecting defendant's argument that there was insufficient evidence that he was convicted of a crime of violence since he entered an Alford plea without admitting guilt).

[2] The PSR correctly cites the language of § 2K2.1(a)(4)(A), but inadvertently cites this provision as § 2K2.1(a)(2). J.A. 88. Compare U.S.S.G. § 2K2.1(a)(4)(A), with § 2K2.1(a)(2).

as a "residual" or "otherwise" clause pertaining to "conduct that presents a serious potential risk of physical injury to another." See United States v. Jenkins, 631 F.3d 680, 682 n.5 (4th Cir. 2011).

"A determination of whether a defendant's offense of conviction constitutes a crime of violence under § 4B1.2(a) of the Guidelines is a legal issue that we review de novo." United States v. Mobley, 687 F.3d 625, 627 (4th Cir. 2012) (internal citations omitted). "We rely on precedents evaluating whether an offense constitutes a 'crime of violence' under the Guidelines interchangeably with precedents evaluating whether an offense constitutes a 'violent felony' under the ACCA, because the two terms have been defined in a manner that is 'substantively identical.'" United States v. King, 673 F.3d 274, 279 n.3 (4th Cir. 2012) (internal citations omitted).

"In assessing whether an offense constitutes a crime of violence under the Sentencing Guidelines, two types of analyses are potentially applicable—known as the categorical approach and the modified categorical approach." United States v. Montes-Flores, 736 F.3d 357, 364 (4th Cir. 2013) (internal quotation marks and citations omitted). "The categorical approach focuses on the elements of the prior offense rather than the conduct underlying the conviction," and "[t]he point of the categorical inquiry is not to determine whether the defendant's conduct

6

could support a conviction for a crime of violence, but to determine whether the defendant was in fact convicted of a crime that qualifies as a crime of violence." United States v. Cabrera-Umanzor, 728 F.3d 347, 350 (4th Cir. 2013) (emphasis in original) (internal citations omitted). See Begay v. United States, 128 S.Ct. 1581, 1584 (2008) ("In determining whether this crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.") (citing Taylor v. United States, 110 S.Ct. 2143, 2160 (1990)). As such, the categorical approach requires us to "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—i.e., the offense as commonly understood." Descamps v. United States, 133 S.Ct. 2276, 2281 (2013). "In evaluating a state court conviction for . . . predicate offense purposes, a federal court is 'bound by the [state supreme court's] interpretation of state law, including its determination of the elements of' the potential predicate offense." United States v. Hemingway, 734 F.3d 323, 333 (4th Cir. 2013) (alteration in original) (internal citations omitted).

However, we may apply a modified categorical approach in "a narrow range of cases," Taylor, 110 S.Ct. at 2160, in which "the

7

prior state conviction rests on a divisible statute—that is, a statute that 'contains divisible categories of proscribed conduct, at least one of which constitutes—by its elements—a violent felony,'" Montes-Flores, 736 F.3d at 364-65 (internal citations omitted). As the Supreme Court explained in Descamps, a divisible statute "sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building or an automobile." 133 S.Ct. at 2281 (emphasis in original). "If one alternative (say, a building) matches an element in the generic offense, but the other (say, an automobile) does not, the modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." Id. "The court can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime." Id.

Importantly, the Supreme Court explained in Descamps that:

The modified approach thus acts not as an exception, but instead as a tool. It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime. And it preserves the categorical approach's basic method: comparing those elements with the generic offense's. All the modified approach adds is a mechanism for making that comparison when a statute lists multiple, alternative elements, and so effectively creates 'several

8

different . . . crimes.' . . . If at least one, but not all of those crimes matches the generic version, a court needs a way to find out which the defendant was convicted of. That is the job, as we have always understood it, of the modified approach: to identify, from among several alternatives, the crime of conviction so that the court can compare it to the generic offense.

Id. at 2285 (internal citations omitted). Thus, our first inquiry is whether the categorical or the modified categorical approach is appropriate with regard to CDVHAN.

III.

In order to determine whether we may stray from the categorical approach, we must examine the elements of CDVHAN. CDVHAN is codified by S.C. Code Ann. § 16-25-65. At the time of Chisolm's conviction,[3] a defendant was guilty of CDVHAN if he committed the offense of criminal domestic violence ("CDV")

---

[3] § 16-25-65 has since been amended, and the current version provides that:

A person who violates Section 16-25-20(A) is guilty of the offense of criminal domestic violence of a high and aggravated nature when one of the following occurs. The person commits:

(1) an assault and battery which involves the use of a deadly weapon or results in serious bodily injury to the victim; or

(2) an assault, with or without an accompanying battery, which would reasonably cause a person to fear imminent serious bodily injury or death.

S.C. Code Ann. § 16-25-65 (2006).

while also committing the offense of assault and battery of a high and aggravated nature ("ABHAN"). S.C. Code Ann. § 16-25-65 (2001).[4] Thus, as then defined, CDVHAN is the combination of CDV and ABHAN, such that the elements of CDVHAN are merely the combined elements of each component crime. Under Section 16-25-20, CDV, the first component of CDVHAN, is defined as follows:

> It is unlawful to: (1) cause physical harm or injury to a person's own household member, (2) offer or attempt to cause physical harm or injury to a person's own household member with apparent present ability under circumstances reasonably creating fear of imminent peril.

S.C. Code Ann. § 16-25-20 (1994) (amended 2004). ABHAN was a common law offense at the time, defined as:

> the unlawful act of violent injury to another accompanied by circumstances of aggravation. . . . Circumstances of aggravation include the use of a deadly weapon, the intent to commit a felony, infliction of serious bodily injury, great disparity in the ages or physical conditions of the parties, a difference in gender, the purposeful infliction of shame and disgrace, taking indecent liberties or familiarities with a female, and resistance to lawful authority.

State v. Fennell, 531 S.E.2d 512, 516-17 (S.C. 2000) (internal citations omitted).[5]

---

[4] Chisolm does not dispute that CDVHAN is punishable by a term of imprisonment exceeding one year.

[5] South Carolina subsequently redefined and codified ABHAN as a felony offense. See S.C. Code Ann. § 16-3-600(B)(1) (2011) (providing that a person is guilty of ABHAN "if the person unlawfully injures another person, and: (a) great bodily injury (Continued)

10

In this case, the district court applied the modified categorical approach without offering any explanation for why that approach was appropriate. Both Chisolm and the Government now agree that the modified categorical approach was improper, although they offer no legal analysis to support this proposition, presumably relying on our recent jurisprudence holding that the categorical approach was required for the lesser-included offense of ABHAN. See Hemingway, 734 F.3d 323 (holding that ABHAN is categorically not a violent felony under the ACCA's residual clause); Montes-Flores, 736 F.3d 357 (holding that ABHAN is categorically not a crime of violence under the guidelines). However, the parties' mere agreement does not resolve this question of law.

The statutory definition of CDVHAN at the time of Chisolm's conviction consisted of the elements of ABHAN coupled with a violation of CDV, that is, Chisolm must have committed both ABHAN and CDV to be guilty of CDVHAN. The modified categorical approach is only appropriate "when a statute lists multiple, alternative elements, and so effectively creates 'several different . . . crimes,'" at least one, but not all, of which matches the generic version of a crime of violence. Descamps,

_____

to another person results; or (b) the act is accomplished by means likely to produce death or great bodily injury.")

11

133 S.Ct. at 2285 (emphasis added). However, the modified categorical approach is improper here because CDVHAN does not set forth elements in the alternative describing several different crimes. Instead, it is an indivisible statute, presenting two elements in the conjunctive, rather than a divisible statute that sets forth its elements in the disjunctive. For this reason, we apply the categorical approach to determine whether CDVHAN is a crime of violence.

IV.

Since we have already held that ABHAN is categorically not a crime of violence, what remains to be decided in this appeal is whether the other component of CDVHAN — CDV — matches any of the elements of the generic crime of violence. For this inquiry, we must revisit the elements of CDV itself. As noted above, the CDV statute provides as follows:

> It is unlawful to: (1) cause physical harm or injury to a person's own household member, (2) offer or attempt to cause physical harm or injury to a person's own household member with apparent present ability under circumstances reasonably creating fear of imminent peril.

S.C. Code Ann. § 16-25-20 (1994).

As an initial matter, we make clear here that the categorical approach applies even to our consideration of CDV alone. On the face of the statute, CDV is sub-divided into two

12

parts, one penalizing the causation of physical harm and the other penalizing the offer or attempt to cause physical harm with the apparent present ability under circumstances reasonably creating fear of imminent peril. However, rather than "effectively creat[ing] several different crimes," these two sections of CDV penalize different levels of completion of the <u>same crime</u>: the offer, attempt, or actual causation of physical harm. Though this conduct may vary in effect, the behaviors underlying the two enumerated parts of the CDV statute do not "differ[] so significantly . . . that . . . a sentencing court must treat the two as different crimes." <u>Chambers v. United States</u>, 129 S.Ct. 687, 690 (2009) (internal citations omitted). Rather, CDV is not a divisible statute since both parts prohibit the same type of behavior, merely making explicit that the conduct is unlawful no matter whether the defendant successfully accomplishes the physical harm.

Our decision in <u>United States v. Rivers</u>, 595 F.3d 558 (4th Cir. 2010) lends further support to our conclusion that the modified categorical approach is improper with respect to CDV. In <u>Rivers</u>, we considered whether a South Carolina statute penalizing the failure to stop for a blue light qualified as a violent felony under the ACCA. Under that statute, "it is unlawful for a motor vehicle driver, while driving on a road, street, or highway of the State, to fail to stop when signaled

13

by a law enforcement vehicle by means of a siren or flashing light." S.C. Code Ann. § 56-5-750(A). Importantly, "[f]ailure to see the flashing light or hear the siren does not excuse a failure to stop when the distance between the vehicles and other road conditions are such that it would be reasonable for a driver to hear or see the signals from the law enforcement vehicle." Id. Because one could commit the offense either intentionally or without any intent at all, we held that "[t]here is no varied behavior underlying the elements of a blue light offense," and the statute instead "proscribes one type of behavior: failing to stop for a blue light." Rivers, 595 F.3d at 564. We therefore held that the modified categorical approach was improper "because the statute only contains one category of crime." Id. Likewise, CDV may be committed intentionally or with no intent at all,[6] and the same behavior underlies both parts of the offense. Regardless of how far this

---

[6] We note that the absence of any required mens rea for CDV has no bearing on the ultimate question of whether CDVHAN is a crime of violence since a CDVHAN conviction also requires the commission of ABHAN. Although the South Carolina Supreme Court "ha[s] not explicitly identified any particular mental state the State must prove in order for a defendant to be found guilty of ABHAN," Fennell, 531 S.E. 2d at 517, the Court has affirmed jury instructions advising that, in order to prove ABHAN beyond a reasonable doubt, the State must prove that the defendant acted with "recklessness or gross recklessness," see State v. Sussewell, 146 S.E. 697, 698 (S.C. 1929). See also Hemingway, 734 F.3d at 338 (describing ABHAN's requisite mental state as recklessness).

14

type of behavior has actually progressed, the CDV statute proscribes a single category of crime. For the above reasons, we must apply the categorical approach to our analysis of CDV.

We first consider whether CDV falls under the force clause of the guidelines, which defines a crime of violence as a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another . . . " § 4B1.2(a)(1). The Supreme Court has explained that, for the purpose of the force clause, "the phrase 'physical force' means <u>violent</u> force—that is, force capable of causing <u>physical pain or injury</u> to another person." <u>Johnson v. United States</u>, 559 U.S. 133, 140 (2010) (second emphasis added). It is clear that a defendant's violation of the CDV statute falls within the force clause if he actually causes physical harm to a household member or attempts to do so with the apparent present ability under circumstances reasonably creating fear of imminent peril.

However, the categorical approach requires us to look at the definition of CDV and "determine whether the conduct criminalized, <u>including the most innocent conduct</u>, qualifies as a crime of violence." <u>Montes-Flores</u>, 736 F.3d at 369 (emphasis added). As such, we must resolve the more difficult question of whether the most innocent conduct penalized under the CDV statute — the "offer . . . to cause physical harm or injury to a person's own household member with apparent present ability

15

under circumstances reasonably creating fear of imminent peril" — sufficiently falls within the force clause. If it does not, we must then proceed to consider whether CDV constitutes one of the enumerated offenses or falls within the residual clause. Because we hold that an offer to cause physical harm or injury to a household member under the CDV statute coincides with the "threatened use of physical force against the person of another," however, our inquiry ends with the force clause.

South Carolina has provided limited guidance as to the precise meaning of an "offer" to cause physical harm or injury, but as the state's courts have used the term, an offer to commit physical harm constitutes, at the least,[7] a threat to do so. For instance, South Carolina defines assault, a lesser-included offense of CDV, State v. LaCoste, 553 S.E.2d 464, 472 (S.C. Ct. App. 2001), as "an unlawful attempt or offer to commit a violent

_____

[7] To the extent that South Carolina has also used the word "offer" to describe conduct that rises to the level of an attempt to cause harm, such an understanding of "offer" is ill-fitting in the context of the CDV statute. Since CDV prohibits the "offer or attempt to cause physical harm or injury" to a household member, we construe the statute such that the words "offer" and "attempt" are distinct in meaning. See TRW Inc. v. Andrews, 122 S.Ct. 441, 449 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotation marks and citations omitted); United States v. Broncheau, 645 F.3d 676, 684 (4th Cir. 2011) ("We should also strive, of course, when interpreting a statute, to give effect to each word and provision thereof.").

16

injury upon the person of another, coupled with a present ability to complete the attempt or offer by a battery," In re McGee, 299 S.E.2d 334, 334 (S.C. 1983) (per curiam) (internal citations omitted).  South Carolina courts have characterized the behavior which gives rise to an assault as a type of threat, Mellen v. Lane, 659 S.E.2d 236, 244 (S.C. Ct. App. 2008), and state law requires that the attempt or offer to commit violence involve a physical effort, State v. Sanders, 75 S.E. 702, 703 (S.C. 1912).  See City of Gaffney v. Putnam, 15 S.E. 2d 130, 131 (S.C. 1941) (explaining that mere words, no matter how threatening, do not constitute an assault "unless accompanied by an actual offer of physical violence").

By example, in In re McGee, the appellant was a juvenile who was adjudicated delinquent of assault after she and another juvenile threatened an employee of their detention center.  299 S.E.2d at 334.  Standing four to six feet away from the employee, the other juvenile raised a baseball bat and threatened to hit the employee if she did not "hush," while the appellant "'dared' her accomplice to strike the employee."  Id.  "The employee feared harm from the juveniles, even though neither made any overt act other than to hold up the bat and make the verbal threats."  Id.  The Supreme Court of South Carolina affirmed the assault conviction, holding that while the appellant's mere words alone did not constitute assault, she was

17

nonetheless liable for the offense in light of her accomplice's threatening behavior.  Id.

The implication of South Carolina's jurisprudence regarding assault is that an "offer" to cause physical harm is not created by mere words alone, but by an expression of one's intention or willingness to impose a violent injury coupled with a physical effort to actually cause the offered violence — that is, a threat.  See Oxford English Dictionary 998 (2d ed. 1989) (defining "threaten" as "[t]o hold out or offer (some injury) by way of a threat; to declare one's intention of inflicting.").  A defendant may not be convicted of CDV unless he has caused — or attempted or offered to cause with the apparent present ability to do so — physical harm or injury, and in light of the above understanding of an "offer," it is evident that a conviction for CDV requires the type of violence set forth in the force clause. See State v. Grace, 564 S.E.2d 331, 335 (S.C. Ct. App. 2002) ("A criminal domestic violence charge is an act of violence towards another.").

Although we consider here the meaning of "offer" under South Carolina law, we note that several of our sister circuits have similarly understood an offer as amounting to a threat in the context of the force clause.  See, e.g., United States v. Mitchell, 743 F.3d 1054, 1059 (6th Cir. 2014) (finding that a Tennessee offense involving "physical force offered or

18

impending" ... "directly corresponds to [the] 'use or threatened use of physical force'"); <u>United States v. Cerda-Enriquez</u>, 477 F. App'x 565, 567 (11th Cir. 2012) ("'[O]ffering' to do violence involves the attempted use or threatened use of 'physical force' or 'violent force.'"); <u>United States v. Dudley</u>, No. 99-2823, 2000 WL 1286259, at *1 (8th Cir. Sept. 13, 2000) (per curiam) (holding that the "offer to commit violence to an officer or employee of a correctional institution" inherently involves "the use or threatened use of physical force").

For all of the above reasons, we must conclude that because an "offer" to cause physical harm constitutes the threatened use of physical harm, the CDV statute falls entirely within the force clause. Because CDVHAN requires the commission of CDV, it necessarily follows that CDVHAN, as it was then defined, is categorically a crime of violence.[8] Although we disagree with

---

[8] Chisolm also argues that CDVHAN can be committed recklessly, and thus, that it is not categorically a crime of violence. The Supreme Court has declined to address whether recklessness is a sufficient <u>mens</u> <u>rea</u> under the force clause. <u>See</u> <u>Leocal v. Ashcroft</u>, 125 S.Ct. 377, 382, 384 (2004). We most directly addressed this issue in <u>Berjarano-Urrutia v. Gonzales</u>, although that case involved 18 U.S.C. § 16(b), which aligns with the residual clause rather than with the force clause. 413 F.3d 444, 447 (4th Cir. 2005) (holding that, with respect to § 16(b), the decision in <u>Leocal</u> "strongly indicates that the result . . . would have been the same even had a violation of the statute there at issue required recklessness rather than mere negligence."). In discussing the enumerated offenses, we more recently explained that "South Carolina's recklessness requirement [for involuntary manslaughter] would appear to (Continued)

the district court's application of the modified categorical approach, "we may affirm a judgment for any reason appearing on the record."  See Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).

V.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

require a mens rea that comports with the Model Penal Code definition" for the generic manslaughter offense. United States v. Peterson, 629 F.3d 432, 438 (4th Cir. 2011).  As such, we are left with an absence of controlling authority pertaining directly to the force clause, and authority pulling in different directions with respect to the sufficiency of a recklessness mens rea for the residual clause and for the enumerated offenses.  The limited support and argument that Chisolm has offered for his proposition do not aid the resolution of this issue, thus we leave this question to be decided in a case in which the matter is more squarely at hand.