**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

——————————

**No. 21-4343**

——————————

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

KYMONETHY JAQUAY WALKER,

Defendant – Appellant.

——————————

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, District Judge.  (5:20-cr-00475-BO-1)

——————————

Submitted:  October 18, 2022                    Decided:  July 6, 2023

——————————

Before AGEE and RUSHING, Circuit Judges, and MOTZ, Senior Circuit Judge.

——————————

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

——————————

**ON BRIEF:** G. Alan Dubois, Federal Public Defender, Eric Joseph Brignac, Chief Appellate Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, Kristine L. Fritz, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

——————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Kymonethy Jaquay Walker pleaded guilty to possessing a firearm as a convicted felon and was sentenced to 108 months' imprisonment. He now appeals his sentence, arguing that the district court erred (1) in applying a cross-reference to robbery when calculating his advisory Sentencing Guidelines range, and (2) by failing to address his nonfrivolous arguments in favor of a reduced sentence and inadequately explaining its chosen sentence. We disagree as to the first argument and thus affirm the district court's application of the robbery cross-reference. As for the second argument, however, the Government concedes that the district court did not adequately respond to Walker's nonfrivolous mitigation arguments or otherwise explain its sentence; we agree and therefore vacate Walker's sentence and remand for resentencing.

I.

As recounted in the Presentence Report ("PSR"), in the late-evening hours of January 3, 2020, Walker met Emersonsue Dale in Dale's motel room and sold her drugs. Before Walker could leave, Dale's friend TG, a 17-year-old female who was staying in the room with Dale, arrived at the motel. Supposing that TG would disapprove of Walker's being in the room, Dale asked Walker to hide in the bathroom. Walker initially agreed, but he later exited the bathroom after concluding that TG had stolen some of his cocaine. Walker then ordered Dale into the bathroom at gunpoint and confronted TG. The encounter soon turned physical. After choking TG, Walker racked his handgun and pistol-whipped her in the head several times, causing severe lacerations that required hospitalization.

2

Walker doesn't dispute any of these facts, but he does dispute the PSR's account of what happened next. According to the PSR, after Walker hit TG repeatedly in the head with his handgun, Walker told TG "to give him everything she had." J.A. 45. TG complied, "hand[ing] over her cell phone, bank card, and room key." J.A. 45. Walker then threatened to shoot TG if she reported the incident to the police.

On January 5, law enforcement searched Walker's residence and found the handgun used to hit TG, among other illicit items. A grand jury sitting in the Eastern District of North Carolina later indicted Walker on one count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Walker pleaded guilty without a written plea agreement.

In calculating Walker's advisory Sentencing Guidelines range, the PSR applied the cross-reference to the robbery guideline. *See* U.S. Sent'g Guidelines Manual ("USSG") §§ 2K2.1(c), 2X1.1(a), 2B3.1(a) (U.S. Sent'g Comm'n 2018). As a result, Walker ultimately received a total offense level of 30, which, when paired with his criminal history category of IV, yielded an advisory Guidelines range of 135 to 168 months' imprisonment, restricted by the statutory maximum of 120 months. *See* 18 U.S.C. § 924(a)(2) (2018); USSG § 5G1.1(a).[1] Without the robbery cross-reference, Walker would have received a

---

[1] When Walker was sentenced, 18 U.S.C. § 924(a)(2) provided for a statutory maximum of 10 years' imprisonment for a violation of § 922(g)(1). Today, the statutory maximum is 15 years. *See* Bipartisan Safer Communities Act, Pub. L. No. 117-159, § 12004(c), 136 Stat. 1313, 1329 (2022).

total offense level of 23, which would have resulted in an advisory Guidelines range of 70 to 87 months' imprisonment.

Walker filed a one-page letter objecting to the PSR's robbery allegation, stating in relevant part:

> In paragraph 6 [reciting the offense conduct], please add a footnote: "WALKER disputers [sic] aspects of TG's account of events. He does admit that an altercation occurred and that he did strike her with a weapon. He contends that there was no robbery."

> With respect to the guideline calculations, Mr. Walker respectfully objects to the robbery cross-reference, as there was no robbery. He did not take [TG's] belongings. Her belongings were not recovered from him during the search.

Objections to Presentence Report, *United States v. Walker*, No. 5:20-cr-475-BO-1 (E.D.N.C.), ECF No. 38.

In an addendum to the PSR, the probation officer maintained that the robbery cross-reference was appropriately applied based on TG's account of the incident, namely, that Walker pistol-whipped TG and directed her at gunpoint to give him everything she had, after which TG handed over her cell phone, bank card, and motel room key.

At sentencing, Walker, through counsel, renewed his objection to the robbery cross-reference, contending that no robbery occurred. Walker's counsel again pointed out that none of TG's belongings were discovered at Walker's residence when it was searched "just hours later." J.A. 21.[2] Counsel posited that the cell phone "was allegedly a pretty nice

---

[2] According to Walker's counsel, the search of the residence occurred essentially on "the same day" as the offense. J.A. 21. Counsel apparently misunderstood the record, which demonstrates that the offense was committed on the night of January 3, 2020; that law enforcement responded shortly after midnight on January 4; and that law enforcement searched Walker's residence on January 5, well over 24 hours after the offense.

iPhone, . . . so I don't think it would have been thrown away." J.A. 21. Counsel further noted that discovery in the case revealed that Dale "actually gave the phone back to [TG]." J.A. 22. All these facts, counsel contended, supported Walker's consistent representation that "he never took the phone or the bank card or the room key out of the room." J.A. 22. Moreover, counsel mused that the fact that Walker admitted to "the more serious conduct of assaulting [TG]" lent "some credibility to the fact that he didn't take these items out [of the room]." J.A. 22. Walker did not testify or otherwise put on any evidence to rebut the PSR's recitation of TG's statement supporting the robbery cross-reference.

Thereafter, the district court inquired as to whether TG, who was present at the sentencing, wished to allocute. The Government indicated that TG did not want to allocute but that it was "happy to speak on her behalf." J.A. 24. It then summarized the offense conduct. As to the alleged robbery, the Government reiterated the PSR's findings that Walker repeatedly hit TG in the head with a handgun before ordering her to give him everything she had, and that TG then handed over her phone, bank card, and room key. The Government emphasized that, because the robbery occurred at the moment Walker forcibly took TG's items from her, it did not matter whether those items were later returned to her.

After hearing from both sides, the district court overruled Walker's objection to the robbery cross-reference and adopted in full the PSR's factual findings.

Aside from the robbery cross-reference objection, Walker raised several nonfrivolous mitigating factors involving his upbringing and other family circumstances

5

that he believed justified a downward variance somewhere in the range of 70 to 87 months' imprisonment.

Without addressing those arguments or otherwise providing any explanation, the district court sentenced Walker to 108 months' imprisonment, representing a downward variance of 12 months.

This appeal followed. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

II.

We begin with Walker's contention that the district court clearly erred in applying the cross-reference to the robbery guideline. According to Walker, because he specifically objected to the robbery allegation, the Government had an affirmative obligation to put on evidence at sentencing to support the robbery cross-reference. And because the Government failed to do so and instead relied only on the PSR's disputed factual findings, Walker argues that the district court lacked a sufficient factual basis to apply the robbery cross-reference.

"We review the factual findings underlying a district court's application of a Guidelines cross-reference for clear error and the court's legal conclusions de novo." *United States v. Lynn*, 912 F.3d 212, 216 (4th Cir. 2019).

At sentencing, the Government has the burden to prove a cross-referenced offense by a preponderance of the evidence. *United States v. Slager*, 912 F.3d 224, 232 (4th Cir. 2019). To carry that burden, the Government may rely on the PSR's factual findings

6

without the need to put on additional evidence, unless the defendant affirmatively demonstrates that those findings are unreliable. *See United States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990). Importantly, however, a defendant cannot make this affirmative showing by offering nothing more than a "mere objection" to the PSR's findings. *Id.* Rather, the defendant must specifically "articulate the reasons why the facts contained [in the PSR] are untrue or inaccurate." *Id.* Absent such a showing, "the court is free to adopt the findings of the [PSR] without more specific inquiry or explanation." *Id.* (cleaned up).

Having fully reviewed the record, we conclude that Walker failed to sufficiently call into question the reliability or accuracy of the PSR's findings. As a result, the district court did not clearly err in adopting those findings and applying the robbery cross-reference.

In his presentence written objections to the PSR, Walker stated in conclusory fashion that "there was no robbery," that "[h]e did not take [TG's] belongings," and that "[TG's] belongings were not recovered from him during the search." Objections to Presentence Report, *supra*. The first two of these statements are nothing more than bald denials of the robbery allegation, which are wholly insufficient to satisfy Walker's affirmative duty to demonstrate the PSR's unreliability or inaccuracy. *See Terry*, 916 F.2d at 162. The third statement is of little probative value. That TG's belongings were not recovered from Walker's residence more than 24 hours after the offense does not materially undermine the PSR's finding that Walker assaulted TG with a handgun and took her belongings at gunpoint in the motel room on the night of January 3, 2020—the conduct amounting to robbery under North Carolina common law. *See State v. Smith*, 292 S.E.2d 264, 270 (N.C. 1982) (defining common-law robbery as "the felonious, non-consensual

7

taking of money or personal property from the person or presence of another by means of violence or fear"); *see also United States v. Davis*, 679 F.3d 177, 182 (4th Cir. 2012) ("A sentencing court may apply a Sentencing Guidelines cross-reference to conduct amounting to a violation of state law." (cleaned up)).

Similarly, at sentencing, Walker presented *no* evidence rebutting the robbery allegation. Rather, his attorney echoed his general denial of the robbery allegation, again stressing that none of TG's belongings were found at Walker's residence and citing Walker's consistent averment that "he never took the phone or the bank card or the room key out of the room." J.A. 22. Counsel further pointed to discovery in the case indicating that "[Dale] actually gave the phone back to [TG]." J.A. 22. Again, however, whether the belongings were found at Walker's residence or whether Walker even took those items out of the motel room does not answer the central question whether he effected "the felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear." *Smith*, 292 S.E.2d at 270. Indeed, once these elements are satisfied, the offense is complete; whether the robber actually keeps the items is irrelevant. *See State v. Sumpter*, 347 S.E.2d 396, 401 (N.C. 1986) (stating that the offense of common-law robbery is complete once "the thief succeeds in removing the stolen property from the victim's possession"). Thus, those factual assertions, even if true, are unavailing.[3] Counsel's remaining remarks on this issue at sentencing amount only to

---

[3] If anything, the fact that Dale "gave the phone *back* to [TG]," J.A. 22 (emphasis added), is consistent with the robbery allegation as it suggests that someone took TG's
(Continued)

argument and speculation, neither of which suffices to undercut the veracity of the PSR's findings.

Because Walker did not present any evidence to contradict or otherwise undermine the PSR's findings but merely noted his disagreement with them, we hold that he failed to make an affirmative showing that the PSR's findings were untrue or inaccurate, and the district court did not err in adopting those findings.

III.

Walker next argues, and the Government concedes, that the district court failed to adequately respond to his nonfrivolous mitigation arguments or otherwise explain its selected sentence, thus warranting remand and resentencing. On this point, we agree.

As we have explained, "[r]egardless of whether the district court imposes an above, below, or within-Guidelines sentence, it must place on the record an individualized assessment based on the particular facts of the case before it." *United States v. Carter*, 564 F.3d 325, 330 (4th Cir. 2009) (cleaned up). In doing so, the "court must address the parties' nonfrivolous arguments in favor of a particular sentence, and if the court rejects those arguments, it must explain why in a sufficiently detailed manner to allow this Court to conduct a meaningful appellate review." *United States v. Blue*, 877 F.3d 513, 519 (4th Cir. 2017). A district court's failure to adequately explain its sentence or its failure to provide

---

phone to begin with, and there's been no suggestion that Dale or any other person besides Walker was responsible for that parting.

9

some indication that it gave reasoned consideration to a party's nonfrivolous arguments constitutes procedural error. *Carter*, 564 F.3d at 328–29; *United States v. Lynn*, 592 F.3d 572, 581 (4th Cir. 2010); *see* 18 U.S.C. § 3553(c) (stating that a district court must "state in open court the reasons for its imposition of the particular sentence").

Here, the district court failed not only to respond to any of Walker's nonfrivolous mitigation arguments but also to provide any explanation whatsoever for its sentence. In those circumstances, we agree with the parties that the proper course is to vacate Walker's sentence and remand for a new sentencing hearing to be conducted consistent with this opinion.

## IV.

For these reasons, we affirm the district court's application of the robbery cross-reference, but we vacate Walker's sentence and remand for resentencing.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this Court and argument would not aid in the decisional process.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*